## CROOKER BROS. & LAMEREAUX v. BROWN.

1. **Contract:** CONDITIONAL SALE. C. entered into a contract with R., by the terms of which the former was to furnish at Minneapolis a certain quantity of lumber, which R. was to freight to La Porte and there sell, the profits of the transaction to be divided between the parties: *Held*, that this did not constitute a conditional sale, which became absolute upon a failure to record the contract.

2. ———: FRAUD: SECRET AGREEMENT. By permitting R. to hold himself out to others as the owner of the lumber while he held it under a secret agreement in trust for plaintiffs, they would be guilty of fraud upon the creditors of R. who had given credit without knowledge of the agreement.

*Appeal from Blackhawk Circuit Court.*

FRIDAY, DECEMBER 18.

ACTION of replevin for a quantity of shingles, lath and lumber, of the aggregate value of $2,012.33. The defendant's answer denies the wrongful taking and detention of the property in question, and alleges that it belonged to and was in the possession of N. E. Reed, and was attached by defendant as the property of Reed in an action wherein Edger & Co. were plaintiffs and said Reed was defendant. There was a jury

trial, and a verdict and judgment for plaintiffs. Defendant appeals.

*Boies, Allen & Couch*, for appellant.

*G. Bishop* and *Miller & Preston*, for appellees.

DAY, J.—I.   J. B. Crooker testified that N. E. Reed was agent for plaintiffs, selling lumber for them at La Porte City, Iowa, under an arrangement in writing, which was produced and read in evidence, and is as follows:

" We, the undersigned, Crooker Bros. & Lamereaux, of the city of Minneapolis, and state of Minnesota, parties of the first part, hereby agree with N. E. Reed, of La Porte, Iowa, party of the second part, to furnish him with lumber to the extent of 100,000 feet or more, and as near as may be keep said stock in yard up to that figure. And said party of the second part hereby agrees to advance cash to pay freight on the same to the amount of six hundred dollars, which sum is to remain in the concern until after wheat harvest next fall. Said party of the second part is also to sell for cash, or assume all debts made otherwise than for cash, and keep an accurate account of all lumber received,—the amount sold and on hand must agree therewith,—to remit for all sales as fast as they are made, until the six hundred dollars advanced for freight is paid, after which freights are to be paid out of the receipts arising from sales.   After wheat harvest in the fall, said Reed is to withdraw the amount so advanced for freight as he may desire.   The business to be continued for one year or more, if agreeable to all the parties concerned.   The profits to be equally divided, and the said parties of the first part are to furnish the lumber at market rates in Minneapolis, and in case of a run in prices at La Porte, they are to reduce prices correspondingly, but such run or reduction shall not bring prices below what both parties may agree upon as satisfactory. The business is to be conducted in the name of N. E. Reed, Agt. Each party to have an equal voice in all questions that may hereafter arise, and said Reed is to give his time and attention and run the business without charge or expense.   In witness

hereof we have hereunto set our hands and seals, this 17th day of February, 1872.  CROOKER BROS. & LAMEREAUX,
N. E. REED."

The witness further testified that the lumber in question was shipped to Reed under this contract, and that it was so in his hands at the time it was attached. The defendant asked the court to instruct the jury that " the contract under which plaintiffs prove that the lumber in question was furnished N. E. Reed, amounts to a contract whereby the transfer and ownership of personal property is made to depend upon a condition." The court refused to so instruct, and gave the following instruction:

" 6. It becomes the duty of the court to construe the contract, which you are instructed is a contract of agency, whereby the plaintiffs agreed to furnish to be sold at La Porte City certain lumber, to be sold at said place by said Reed under the name of N. E. Reed, agent; Reed to have his pay for his services as such agent by receiving one-half the profits on the sale of such lumber. By such contract said plaintiffs did not part with the title to said lumber as between them and said Reed, nor as to others, unless you find that said Reed, by his acts and representations, caused others to believe that he was the owner of said property, and said plaintiffs had knowledge of such acts, and consented thereto."

1. CONTRACT: conditional sale.

To the refusal to give the one, and the giving of the other instruction, the defendant excepted.

The instruction, we think, places the proper construction upon the contract. There is no transfer of the ownership of the lumber to Reed, either conditional or absolute. Plaintiffs are to furnish lumber, and keep a certain quantity in the yard. Reed is to give his time and attention to the business, and conduct it as agent. As compensation for his services he is to receive one-half the profits. Until a sale is made by Reed, there is no transfer of the ownership of the property; it remains in plaintiffs. After a sale the title passes to the purchaser, and Reed becomes entitled to one-half the profits.

Appellant's position is that the contract is one for the

transfer or ownership of personal property, within the provisions of Chapter 43, Laws Fourteenth General Assembly, and that, the contract not being recorded, the condition is void, and the sale becomes absolute. We feel well satisfied, however, that the transaction is not within the provisions of that statute.

II. Defendant asked the court to give the following instruction:

" 2. If Crooker Bros. & Lamereaux sent the lumber in question to Reed with intent to have Reed use and deal with it as his own, and with intent to have the public believe that such lumber was the property of Reed, and that Reed did deal with such lumber as his own, with the knowlege of plaintiffs, and by reason of such apparent ownership did procure credit from Edger & Co.; and further believe that defendant, as sheriff, did take such lumber under a writ of attachment duly issued out of the Circuit Court of Iowa, in an action wherein Edger & Co. were plaintiffs, and N. E. Reed was defendant, upon a claim for money advanced upon the faith and belief by Edger & Co. that Reed was the owner of said lumber, the plaintiffs are estopped from asserting their claim to said lumber against Edger & Co., and defendant is entitled to your verdict."

The court refused to give this instruction, but gave the following:

" 3. If the plaintiffs furnished and shipped to said Reed lumber in his own name, permitting him to hold himself out to others as the owner of the lumber thus furnished, with a secret understanding that they should be the owners of said property, said Reed holding it in trust for said plaintiffs, such agreement, consent or understanding, if you should so find, would be in fraud of creditors extending credit without knowledge of the terms of the agreement and understanding between plaintiffs and Reed, and such property would be held liable for the debts thus created."

*2.———: fraud: secret agreement.*

This action of the court defendant assigns as error.

Under the evidence the instruction given was even more favorable to defendant than that asked. There is no conflict

in the evidence that the lumber was shipped to Reed in his own name, and the jury must have so found. In addition to this fact, the instruction given simply requires, in order to hold the lumber for Reed's debts, that plaintiffs permitted him to hold himself out as the owner of the lumber, whilst there was a secret understanding that plaintiffs should be the owners. Thus, a simple tacit *permission* upon the part of plaintiffs, with a knowledge that Reed was holding himself out as the owner, and a failure actively to interpose to prevent such a course would, under the *instructions* given, render the property liable for the debts of Reed. But the instruction asked requires that the lumber should be sent to Reed *with intent* to have him use and deal with it as his own, and *with intent* to have the public believe that such lumber was the property of Reed.

The instruction given, we think, correctly presents the law. The one refused is not so favorable to defendant, and it is not applicable to the evidence. There was no proof that the lumber was shipped to Reed with intent to have him deal with it as his own. The record discloses no error.

AFFIRMED.