## PHELPS v. FOCKLER.

1. **Equity:** PRIORITY OF MORTGAGE LIENS. Plaintiff's mortgage was given only to secure a prior indebtedness, with no agreement for an extension, and was made and recorded December 15. Defendant's mortgage was for purchase money, dated December 7, but not recorded until December 24. *Held* that defendant's mortgage was in equity entitled to priority.

*Appeal from Floyd Circuit Court.*

THURSDAY, JUNE 14.

ACTION to foreclose a real estate mortgage executed to the plaintiff by one Lamers. Henry Fockler was made defendant, as claiming an interest in the property. He appeared and set up a mortgage, and averred that it was paramount to the plaintiff's. The court held that the plaintiff's mortgage was paramount, and rendered a decree accordingly. The defendant appeals.

*Starr & Harrison*, for appellant.

*Boulton & Boulton* and *J. S. Root*, for appellee.

ADAMS, J.—The defendant's mortgage was executed upon the seventh day of December, 1877, and was given for the purchase money. It was not, however, recorded until the twenty-fourth of December. The plaintiff's mortgage was

both executed and recorded on the fifteenth of December. The defendant contends, however, that his equity is superior to plaintiff's for this reason, if for no other, that the plaintiff's mortgage was given to secure a pre-existing debt, and that, too, without any extension of time being given for the payment of the debt. The fact appears to be that the plaintiff had several small claims against Lamers, which he had been attempting for some time to collect or secure. The amount of these claims was finally figured up and put into one note, and an extension given. A chattel mortgage was executed to secure the note. It appears, also, that at the same time Lamers had been negotiating for a loan of money from the firm of Ellis & Ellis, to be secured upon the real estate in question. When the plaintiff took the note and chattel mortgage from Lamers, it was understood that if Lamers succeeded in borrowing from Ellis & Ellis, he should pay a part of the money thus borrowed upon his note to the plaintiff. On the same day, or very soon afterward, this plan was changed. It was arranged between the plaintiff and Lamers that the latter should not borrow of Ellis & Ellis, and that, instead of mortgaging to them, he should mortgage the same land to the plaintiff. The note which had been executed was surrendered, and a new one executed for the same amount, and maturing at the same time, and a mortgage was executed to secure it, which is the mortgage now sued on. The indebtedness secured was manifestly a pre-existing indebtedness, and whatever extension was agreed upon appears to have been agreed upon at the time the surrendered note and chattel mortgage were executed, which was prior to the execution of the mortgage in question. If this were all, it is manifest that the plaintiff's equity could not be deemed superior to that of the defendant's. *Pancoast v. Duval*, 26 N. J., Eq., 445; *Gafford v. Stearns*, 51 Ala., 434; *Manhattan Co. v. Evertson*, 4 Paige, 276; *Vanheusen v. Radcliff*, 17 N. Y., 584; Jones on Mortgages, section 459. But the plaintiff claims that he incurred certain expense in obtaining the

mortgage. The evidence shows that Ellis & Ellis claimed something by way of damage, by reason of Lamers not taking the loan, and that the plaintiff paid the amount claimed. There is no evidence as to what the amount was, and the plaintiff testifies that he cannot state what it was. Ellis & Ellis had examined the title. The damage to them is not shown to be more than reasonable compensation for their labor. The plaintiff had the benefit of the examination. We are not able to infer from the evidence that he did more than pay for the examination. This was a mere incidental expense attendant upon the transaction of the business. It does not differ in kind from the expense of recording a mortgage. Such expense, we think, would not justify us in holding that the plaintiff has an equitable right to have his mortgage declared a prior lien. The plaintiff, however, relies upon another fact as giving him a superior equity. He testifies that, at the time of the execution of the mortgage, and as an inducement to its execution, he guaranteed to Lamers to furnish what seed wheat he would need the next spring, or the money to buy it, and he testifies that he did furnish it to the amount of between $70 and $80. This wheat, we infer, was furnished simply by way of sale, but, whether for cash or on credit, does not appear. If it had been furnished on credit at the time of the execution of the mortgage, though the debt therefor was not secured by the mortgage, possibly it might be held that the plaintiff's mortgage should be deemed paramount, at least to the amount of such debt. But the wheat was not furnished at that time. The most that can be said in respect to what was done at that time is, that the plaintiff agreed to furnish it thereafter. It seems to us extremely doubtful whether such an agreement was one upon which an action could be maintained, and, if not, whether it was such as to give the plaintiff an equitable right to have his mortgage declared a prior lien. But we do not need to determine this. It is not shown that the wheat afterward furnished was not furnished by way of sale for cash, or, at

all events, that the plaintiff was not afterward paid. The burden was upon him to show that he will on the whole sustain some detriment unless he is given a prior lien. If the fact is that, with his lien declared subordinate, he is in as good a position as he would have been if he had not entered into the transaction by which he took the mortgage, his equity is not superior to the defendants. In our opinion, the plaintiff has failed to show any fact which would justify us in holding that his equity is superior.

REVERSED.

### SUPPLEMENTAL OPINION.

THE plaintiff, in a petition for a rehearing, insists that the court erred in not finding that an extension was granted by the plaintiff in consideration of the mortgage sought to be foreclosed. It appeared to us that the extension relied upon by the plaintiff was granted in consideration of the execution of a prior note and chattel mortgage. It is not denied that the prior note and chattel mortgage were actually delivered. Having been delivered, they must have taken effect, and we thought that the agreement to extend according to the terms of the note and mortgage also took effect. But it is said, in the petition for a rehearing, that "the heat of negotiation is not allowed to cool before the parties proceed to settle upon another plan, and a new note was executed, secured by the same chattel mortgage, and also a mortgage on the land." How long a time elapsed between the two plans does not appear, nor do we deem it material. It is sufficient, we think, that, so far as the execution of the first plan was concerned, nothing remained to be done. There is no pretense that, at the time of the delivery of the first note and chattel mortgage, there was any agreement to give the mortgage in suit. There were two successive transactions. The time was extended in the first one, and no other time was agreed upon. But it is insisted that when the first note was surrendered the agreement for an extension came to an end, and that an extension was afterward granted according to the terms of

Phelps v. Fockler.

the second note. But the fact, beyond dispute, is, that the surrender of the first note, and execution and delivery of the second one, identical as to time, were one transaction. There never was a moment after the delivery of the first note when the agreement for an extension was abandoned. But it is said that the plaintiff paid something to Ellis & Ellis in order to get the mortgage upon the land, and it is insisted that this fact, independent of the matter of extension, gives the plaintiff an equitable right to have his mortgage declared paramount. No authority is cited in support of this proposition, and we think that none can be found. The plaintiff has his mortgage for what it is worth, subject only to Fockler's mortgage given for the purchase money. The amount paid Ellis & Ellis is not a charge upon the land. If it were, there might be an equity in giving the plaintiff a priority to that extent. But the amount paid, in any view that can be taken of it, was a mere incidental expense. We do not think that the incurring of such expense would justify us in holding Fockler's mortgage, which was prior in time but unrecorded, subject to the plaintiff's given for an antecedent debt not extended. He has gained something, theoretically at least, in the way of security, and it may be that his mortgage as a second mortgage is worth much more than the amount of this expense.

As to the wheat furnished, we said in our original opinion all that we think it necessary to say. The petition for a rehearing, we think, must be

OVERRULED.