J. E. MARTIN, Appellant, v. WILLIAM FRITZ, Appellee.

**PLEDGES: Title of Property—Pledge by Nonowner.** A person who
1 is not the owner of personal property may not pledge the same for his own debt, even though he is, at the time of the attempted pledge, in the actual possession of the property, and to all appearances the owner thereof.

**CONTRACTS: Construction — In re ''Ownership'' of Property.**
2 Where two joint makers of a note given as the purchase price of a machine agreed that, if one party defaulted in paying his half at maturity, the nondefaulting party should pay the entire note, and that, if the defaulting party did not, within a specified time, repay the one half which had been paid for him, the said machine should become the property of the nondefaulting party, *held* that, when the nondefaulting party paid the entire note, he became the full legal owner of the machine, and that the interest of the defaulting party during the period of grace was *equitable* only.

**CHATTEL MORTGAGES: Lien and Priority—''Existing Creditors.''**
3 Principle reaffirmed that a creditor who does not secure a levy by attachment or execution before notice of an unrecorded sale or mortgage is not protected under Sec. 2906, Code, 1897.

**CHATTEL MORTGAGES: Lien and Priority—Pre-Existing Debt.**
4   Principle recognized that one who acquires a pledge as security for
a pre-existing indebtedness is not a "subsequent purchaser," with-
in the meaning of Sec. 2906, Code, 1897.

*Appeal from Wapello District Court.*—SENECA CORNELL, Judge.

## NOVEMBER 14, 1922.

SUIT in equity, primarily to enjoin the sale of a certain
mining drill and equipment by a pledgee of the property, plain-
tiff claiming to be the owner of the property. By amendment
to petition, plaintiff asked possession of the property. The
court found the pledgee, who is appellee, entitled to possession
of the property as security for his claim, denied permanent in-
junction, and entered judgment against plaintiff for costs. From
this judgment, plaintiff appeals. Facts appear in the opinion.—
*Reversed and remanded.*

*Roberts & Webber* and *Gillies & Daugherty,* for appellant.

*Lloyd L. Duke,* for appellee.

ARTHUR, J.—This controversy arose over the pledging of
a certain drilling machine by one W. E. Bergman to appellee,
William Fritz, to secure an existing indebtedness owing from

Bergman to Fritz, and, as claimed by appellee,
1. PLEDGES: title    to secure a loan made by Fritz to Bergman of
of property:
pledge by        $250, made shortly after the pledging of the
nonowner.
property for existing indebtedness. Appellee,
Fritz, was proceeding to foreclose the pledge and sell the drill-
ing machine and equipment, when, on October 12, 1890, this
action was instituted by appellant, Martin, claiming to be the
absolute owner of the property in question, to enjoin appellee
from selling the property under the lien claimed by appellee.

W. E. Bergman and J. E. Martin held, in equal interests,
certain coal leases and options on land in Wapello County, Iowa.
By agreement between Bergman and Martin, on April 23, 1919,
Bergman entered into a coal mining contract with G. Lewis
Woodford & Company, of Minneapolis, by the terms of which

contract G. Lewis Woodford & Company were to put down twelve prospecting holes on said lands on or before the 1st day of July, 1919. About the 6th day of May, 1919, this drilling contract was modified by supplemental agreement, by the terms of which G. Lewis Woodford & Company were released from their obligation to do the drilling, and a contract was made between G. Lewis Woodford & Company and W. E. Bergman, by which Bergman undertook to do the drilling for G. Lewis Woodford & Company, at 75 cents per foot. Under the original mining contract of April 23, 1919, a royalty of $5,000 was advanced by G. Lewis Woodford & Company, and this sum was placed in the hands of J. E. Martin, as trustee for Bergman and himself, for the payment of moneys coming due on the leases and options held by Martin and Bergman, and for other purposes.

Upon the making of the contract by Bergman to do the drilling, on May 6, 1919, or before that time, Martin and Bergman had decided to purchase the drill in controversy, for the purpose of doing the drilling that Bergman had undertaken; and, for the purpose of defining the manner of paying for and owning the drill between themselves, they entered into a contract, as follows:

2. CONTRACTS: construction: *in re* "ownership" of property.

"It is hereby agreed between the parties that out of the $5,000 fund now on hand paid upon the Bidwell contract, the sum of $2,080 is to be paid upon the purchase price of a drill and the diamonds to be used in connection therewith, which said drill will be taken in the name of W. E. Bergman; that W. E. Bergman will give his 90-day note for the balance of the purchase price of said drill, which note will be indorsed by said Martin; that, when said note is due, if Bergman pays his half of the note, Martin will pay his one half, and the drill will become the joint property of both. If Bergman cannot pay his one half, then Martin will pay the full amount of said note, and if, within 60 days thereafter, said Bergman does not pay his half of said balance, said drill will become the property of said Martin. If thereafter said Martin sells the drill to the G. Lewis Woodford & Company, or to anyone else, out of the amount received for it a sufficient sum shall be applied to reimburse

Martin for his payments for Bergman on the note and his own payments thereon, the balance will be turned back into the fund out of which the original sum of $2,080 is to be paid.''

The contract was not acknowledged and recorded.

Martin had consented to the original contract with G. Lewis Woodford & Company to do the drilling, and was a party to the contract. But Martin was not a party to the later contract between Bergman and G. Lewis Woodford & Company, whereby Bergman was to do the drilling.

In pursuance of the contract above quoted, W. E. Bergman, on May 7, 1919, purchased from E. J. Longyear & Company, of Minneapolis, the drill and the diamonds to be used in connection with it, making a down payment of $2,080 out of the royalty money that had been paid to Martin and Bergman, and held by Martin, trustee; and the balance of the purchase price was paid by Bergman's giving his note, indorsed by Martin, to E. J. Longyear & Company for $1,624.61, drawing 6 per cent interest, and due in 90 days. The drill was shipped to Bergman and received by him in Wapello County, Iowa. The drill note matured; Bergman defaulted in the payment of his half of it; and Martin, on August 6, 1919, paid the full amount due on the note, $1,648.99. At the time of the payment of the note by Martin, on August 6, 1919, Bergman was in actual possession of and was using the drill. Some time later, about September 10, 1919, Bergman had ceased operating the drill, and moved it to the farm of appellee, Fritz, near Blakesburg, in Wapello County, Iowa, and stored it in Fritz's barn. Bergman was owing Fritz about $1,100 for materials which he had purchased from Fritz; and about five days or a week after the drill had been stored in the Fritz barn, Bergman told Fritz that he should hold the drill for his bill. Later, about October 1, 1919, Fritz loaned Bergman $250, which Fritz claimed was advanced to him, with the drill to be held as security. As before mentioned, Martin, from his own funds, paid the note given for the purchase of the drill, and Bergman never repaid Martin his one half of the amount of the note. Fritz held the drill which had been stored with him, and, as he claimed, pledged to him for an existing indebtedness of about $1,100, and for an additional $250 which he loaned to Bergman; and he claims that Bergman pledged the drill to

secure the payment of this debt. He advertised and was proceeding to sell the drill, to satisfy the indebtedness of Bergman to him, when Martin brought this action, to restrain Fritz from selling the drill, and for possession. The court made findings of fact and entered decree as follows:

"The court finds that the said J. E. Martin, plaintiff herein, became the absolute owner of said drill by reason of the performance by him of the terms of said written agreement, above set out, and the nonperformance thereof by the said W. E. Bergman, in that the plaintiff, J. E. Martin, paid the whole of the note therein mentioned, when the same became due, and that the said W. E. Bergman failed to pay his one half thereof within 60 days thereafter, as provided for in said agreement, and that the title of said J. E. Martin became full and absolute at the expiration of the time in which said W. E. Bergman could have performed the same, which time the court finds and fixed as the 5th day of October, 1919. The court further finds that the said J. E. Martin had no legal title to the said drilling machine above described, prior to the said 5th day of October, 1919; and that, until said date, the title to said drilling machine was in W. E. Bergman; and that, prior to said date and on or about the 11th day of September, 1919, the said W. E. Bergman, who was at the time in possession of said drilling machine, and held the legal title thereto, as hereinbefore found, pledged said drilling machine to the defendant, William Fritz, to secure money theretofore advanced, and to secure an indebtedness for property sold by said William Fritz to the said W. E. Bergman, and further advance of money made at or shortly after said time, which indebtedness, with interest thereon, at the time of the commencement of this suit amounted to $1,459.10, and which indebtedness bears 6 per cent interest from said date to this time, now amounts to $1,508.94, and to secure which amount the defendant, William Fritz, has and is entitled to a lien on said property and to hold the property as security therefor and to foreclose said pledge to make the payment thereof, if necessary. * * * It is therefore ordered, adjudged, and decreed by the court that the temporary writ of injunction sued out in this case be dissolved, and that plaintiff's application for permanent injunction be denied; that the title of the plaintiff in and to

said drilling machine, as hereinbefore described, be established and confirmed; and that the right of the defendant to hold said drilling machine, as a pledge to secure the indebtedness as hereinbefore found, is established and confirmed.''

The findings of the court that Martin is now the sole owner of the property in controversy; that he became such owner by reason of the performance by him of the terms of the written contract and the nonperformance of Bergman; and that the title to the property became fully in Martin at the expiration of the time within which Bergman could have performed the contract, —which time the court fixed as October 5, 1919,—are not questioned. But it is urged by appellant that the court erred in finding that "J. E. Martin had no legal title to said drilling machine prior to the 5th day of October, 1919, and that, until said date, the title to said drilling machine was in W. E. Bergman.'' Appellant's contention at this point is that the parties contemplated, as shown by the contract, that, upon the payment of the note given for the balance of the purchase price of the drill, on August 6, 1919, each party contributing his one half of the payment of such note, the legal title to the drill *at that time* was to become fixed in Bergman for one half, and in Martin for the other half of said drill; that the equitable title vested in both parties from the time of the purchase of the drill; and that, when Martin performed his part of the contract by making the payment of his one half of the purchase price, he became the owner of the legal title, as well as of the equitable title, to one half of the drill, without regard to anything which Bergman may have done or failed to do. The record shows that the initial payment on the drill, of $2,080, was from a fund belonging to both Bergman and Martin. It also appears that the remainder of the purchase price was paid by the note of $1,624.21 given to E. J. Longyear & Company, signed by both Bergman and Martin. The contract provides that:

"When said note [the above mentioned note] is due, if Bergman pays his one half of the note, Martin will pay his one half, and the drill will become the joint property of both. If Bergman cannot pay his one half, then Martin will pay the full amount of said note, and if, within 60 days thereafter, said Berg-

man does not pay his half of said balance, said drill will become the property of said Martin.''

We think it manifest that the contract contemplated that, after August 6, 1919, the time when the $1,624.21 note became due and was paid by Martin, Bergman should have title to one half of the drill, only in case he performed his contract by paying one half of the note; and it seems clear that, if Bergman failed to pay one half of the note, his only remaining right was to hold or acquire a one-half interest in the property, by making payment of the amount of one half of the note to Martin within 60 days from that date, and that, in case he failed to pay Martin at the end of 60 days, the title to the property vested wholly in Martin. After August 6th, up to October 5th, Bergman had an equitable interest in the property which he might pledge; but he could not effectively pledge Martin's interest in the drill.

We think there is no escape from the conclusion that, from the time of the purchase, Martin had an interest in the drill which Bergman had no right to pledge; that Martin, from the inception of the purchase, had an equitable title to one half of the drill until the 6th of August; and that Bergman, up to that time, was owner of the legal title, but held the legal title to Martin's one half in trust for Martin. After August 6th, Martin having performed, not only his portion of the contract, but Bergman's portion of the contract also, the legal title certainly rested in Martin for his one-half interest in the drill, and he then, on August 6th, became also the holder of the legal title to the other half; while Bergman had an equitable title to one half, which he could convert into a legal title by payment to Martin of one half of the note. When Bergman failed to reimburse Martin with one half of Martin's payment on the note, he lost both his legal and his equitable title to the property. While the contract provided that ''the drill will be taken in the name of W. E. Bergman,'' in fact Bergman and Martin jointly purchased the drill. The initial payment was made out of the funds in which each had an equal share, and the note given for the balance of the purchase price was signed by both. The contract provided the manner in which payment for the drill should be made, and the manner in which the title should be held. It was not a contract whereby Martin purchased from Bergman or

Bergman purchased from Martin. At all times, Martin had an interest in the property. At the time in September when Bergman pledged the property as security for his individual indebtedness, Martin held the legal title to the property, with an equitable interest in Bergman. At least after August 6th, Martin held legal title to a one-half interest in the drill, because Bergman had defaulted in payment of his one half of the note, and Martin had paid the whole note; and Bergman, after August 6th, had an equitable one-half interest in the drill, which would ripen into legal title if he repaid Martin one half of the amount that Martin had paid out in paying off their joint note,—which he failed to do. So we conclude that Bergman at no time had the right to pledge the interest or property or title of Martin, who was at all times a joint owner with Bergman in the drill, up until October 6th, when, under the contract, he became the full owner. *Frans v. Young,* 24 Iowa 375. This was a replevin case, brought by Henry H. Frans and S. S. Frans to recover possession of a horse. Defendants claimed to hold the horse by virtue of a pledge, to secure a debt due from Henry H. Frans to defendants. On submission of the case, the court instructed the jury that, if Henry H. Frans had possession and control of the horse, and defendants had no knowledge that S. S. Frans had any interest in or was joint owner of the horse, then the pledge of the horse, accompanied by delivery of possession by Henry to defendants, would be valid, although S. S. Frans might not have given his consent thereto. Passing on this instruction, we said (Chief Justice Dillon delivering the opinion):

"In thus making the validity of the pledge depend wholly upon the knowledge or the absence of knowledge on the part of the pledgee of the existence of another joint owner, the court erred. One joint owner cannot, as such, and by virtue of that relation merely, sell or mortgage or pledge the interest of the other joint owner. The purchaser, mortgagee, or pledgee, though ignorant of the existence of another part owner, acquires no right to that other owner's interest in the chattel. This is upon the familiar principle in the law of personal property, that the seller can confer no greater title than he possesses."

We further said:

"Each joint tenant has an equal right to possession. If

one has the actual, peaceable possession, and pledges the property, though to a party with knowledge of the state of the ownership, such pledge is not *void*, but is good to the extent of the pledgor's right; and the pledgee, during the existence of the pledge, has the same right to possession as against the other owner that his pledgor would have had, but no other or greater right.''

Martin insists that Fritz is not in a position to claim the protection of Code Section 2906; and the claim of Fritz is that, as pledgee of the property from Bergman, he comes within the protection of such statute, which reads:

''No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers, without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and filed for record with the recorder of the county where the holder of the property resides.''

We think the recording act is not applicable to the situation presented. Martin and Bergman, joint tenants of the property, were equally entitled to possession of the drill; and, although the physical possession was in Bergman, the

3. CHATTEL MORTGAGES: lien and priority: "existing creditors."

possession, until it was delivered to Fritz to be stored in his barn, was in both Martin and Bergman. Fritz was not an ''existing creditor'' without notice, under the holding in *Myer v. Western Car Co.*, 102 U. S. 1 (26 L. Ed. 59). In the *Myer* case, the term ''existing creditor'' was considered and defined. The court said:

''This leaves no doubt, and clearly confines the operation of the text to such creditors as have by suit perfected a right to impeach the transaction. Such has always been the rule in respect to conveyances made to hinder and delay creditors.''

In the case before us, Fritz had begun no action and secured no lien by reason of attachment or execution upon the property, and consequently, did not place himself within the term ''existing creditor.'' We think that Fritz did not

4. CHATTEL MORTGAGES: lien and priority: preexisting debt.

bring himself within the class of ''subsequent purchasers without notice,'' because he acquired his pledge as security for a pre-existing debt

only. Both Bergman and Fritz, in their testimony, agree that the drill was pledged for about $1,100 for property which Fritz had sold to Bergman prior to the time of the pledge. They also agree that, on September 30th, Fritz let Bergman have $250 more, and charged it against the drill. Concerning the $250 transaction, Fritz testified:

"When Dr. Bergman turned over this property to me, there was $1,100 owing to me at that time. After I took possession of the drill, he advised me that he was very much in need of money; and I let him have $250. He said that the drill would stand good for security, the same as on the balance of the account."

Bergman, who was not a party to the action, and who was Fritz's witness, testified, speaking of the account between him and Fritz:

"On the statement of the account, there is an item on the 30th of September, 1919, $250 cash. That was an accommodation. I did not tell him at that time that he could hold the drill for that $250."

The burden was on Fritz to establish the pledge claimed by him, and we think he failed to establish that Bergman pledged the property for the $250 loan. Fritz and his witness, Bergman, are in direct dispute about this item. We find in the record no corroboration of the contention of Fritz. On the other hand, the dealings between Fritz and Bergman rather corroborate the testimony of Bergman that he did not, at the time he borrowed the $250 from Bergman, pledge the property to secure its payment. We think the trial court was in error in finding that the property was pledged to secure payment of the $250 loan. It is practically conceded by counsel for appellee, and must be, under the authorities, that, if the pledge to Fritz was to secure the pre-existing debt of about $1,100 only, not coupled with the $250 loan, Fritz was not a "purchaser" for value, and not protected against existing ownership or equities of Martin in the drill, even if he had no knowledge that Martin had an interest in the property. 2 Pomeroy on Equity Jurisprudence (4th Ed.), Sections 749, 750, 751; 27 Cyc. 1191; *Port v. Embree,* 54 Iowa 14; *Phelps v. Fockler,* 61 Iowa 340; *Koon v. Tramel,* 71 Iowa 132; *Smith v. Moore,* 112 Iowa 60; *Senneff v. Brackey,* 165 Iowa 525;

*Cambria Sav. Bank v. La Nier,* 135 Iowa 280; *Peoples Sav. Bank v. Bates,* 120 U. S. 556.

Appellee contends that appellant did not pursue the proper remedy; that his proper remedy was by replevin, because, if the injunction prayed by appellant should be made permanent, it would deprive appellee of due process of law, in that appellee might be deprived of a right in the property in question, without trial by jury. Appellant, in his petition, prayed for possession of the property. In effect, the injunction prayed was in aid of the ultimate remedy of detinue. But, however that may be, appellee did not raise the issue in his pleading, and did not move to transfer to law.

Bergman's possession of the drilling machine was as joint owner, in its inception, and there was no change in possession until the drill passed for storage into the hands of Fritz. The possession of Bergman was the possession of both Martin and Bergman, because the possession of one joint owner or joint tenant is the possession of all joint owners or joint tenants. *Frans v. Young,* supra; 23 Cyc. 490. The pledge by Bergman of the joint property was not binding on Martin, a cotenant, who did not join in the pledge and had no knowledge of it, and did not acquiesce therein, and was in no way estopped to assert his property in the drill. 23 Cyc. 494; *Frans v. Young,* supra; *Conover v. Earl,* 26 Iowa 167.

The last paragraph of the contract, providing for disposition of funds arising from the sale of the drilling machine by Martin, "if thereafter Martin sells the drill," was not involved in the instant case, and we express no opinion as to the rights and interests of Martin and Bergman under the provisions of such paragraph.

For the reasons above pointed out, the decree and judgment of the lower court must be and are reversed, and the case is remanded to the district court for decree in harmony with this opinion; or decree may be entered in this court.—*Reversed and remanded.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.