CHARITON & LUCAS COUNTY NATIONAL BANK, Appellee, v. W. C. TAYLOR et al., Appellants.

No. 40448.

OCTOBER 14, 1930.

*Evans & Garrett, G. C. Stuart, O. M. Slaymaker,* and *R. E. Killmar,* for appellants.

*J. W. Kridelbaugh* and *Bracewell, Murrow & Poston,* for appellee.

ALBERT, J.—I.  Briefly stated, this litigation grew out of the following facts:  On July 28, 1927, W. C. Taylor executed a promissory note for $4,000, payable January 28, 1928, to C. E. Taylor, and at the same time, and as a part of the same transaction, to secure the payment thereof, W. C. Taylor and wife, Ruth L., executed a chattel mortgage, covering 30 cows, 18 sows, 110 spring pigs, 11 yearling heifers, 9 spring calves, one roan team, and one bay team.  This mortgage was recorded in Wayne County, Iowa, August 23, 1927, and purported to be acknowledged before one McKibbon, as notary public in and for Lucas County, Iowa.  It is conceded by all parties that McKibbon was not a legal notary public in and for Lucas County at the time this acknowledgment was taken, and that he had no legal authority whatever to take such acknowledgment.

On August 23, 1927, C. E. Taylor indorsed this note, and made a written assignment of this chattel mortgage to the plaintiff in this action.  This assignment was duly recorded in Wayne

County on April 28, 1928. On November 30, 1928, W. C. Taylor and wife executed a chattel mortgage on certain of this property to W. P. Taylor, and on December 31, 1928, the same parties executed a chattel mortgage on part of the same property to one John Morgan.

On January 18, 1928, W. C. Taylor had a large stock sale, and sold part of the stock covered by this chattel mortgage. We have no identification in the record of the chattels sold, but it is claimed that the proceeds thereof amounted to something over $4,000, and that the same was turned over to C. E. Taylor, president of the First National Bank of Derby. This sale was conducted with the knowledge and consent of the plaintiff, and all it has to do with this controversy is the claim made that, when the proceeds of this sale were turned over to C. E. Taylor, he was the agent of the plaintiff, and therefore the mortgage is paid.

According to the evidence, on December 27, 1927, W. C. Taylor wrote a letter to the plaintiff as follows:

"I was talking with Carl [C. E.] Taylor the other day about the note you have against me. He said it was due January 1st, and I thought it was January 15th, so if it is due January 1st, would like to have the privilege of extending them to the middle of January as I intended to have my sale then, as my cows will mostly be fresh then or have springers and I think will help lots in the sale of them. If this will be all right, either tell Carl or write me."

In response to this letter, the plaintiff wrote Carl Taylor, and told him it would be all right with the plaintiff to have the sale at the time suggested, if it would be all right with him (C. E. Taylor). Pursuant thereto, a sale was held by W. C. Taylor January 18, 1928. C. E. Taylor clerked the sale and collected the proceeds, amounting to about $4,000.

The cashier of plaintiff bank testifies that he knew this property was being sold on which they had this chattel mortgage, and that Carl Taylor got a part of the proceeds of said sale. Speaking of Carl's clerking the sale, the cashier testified: "I didn't know he was the fellow that clerked that sale, and I didn't want to know it." By way of explanation, it may be said that Carl (C. E.) Taylor was president of the First National Bank of Derby, and, of course, the proceeds of this sale were in that bank

when it closed. Carl Taylor had been one of the customers of plaintiff bank, and a close and intimate friend of said cashier's, and on two occasions, the plaintiff bank had loaned money to Carl Taylor. The cashier further says that the plaintiff bank and the First National Bank of Derby had dealings, from time to time, and the relations between them were very close. Plaintiff bank wrote C. E. Taylor, urging the collection of the proceeds of this sale, and Taylor replied, in substance, that the balance would be collected in a few days, and W. C. Taylor would then pay the plaintiff. This cashier further testifies, when questioned as to whether he relied upon Carl Taylor in the collection and renewal of the notes:

"I think he renewed all the notes. Q. You relied on his doing it? A. Yes. Q. You left it to him to collect everything that was collected, didn't you? A. I think we did."

We cannot set out all of the testimony in relation to this matter, without unduly extending the opinion; but we have read the same with care, and fail to find sufficient evidence in the record to warrant our holding that C. E. Taylor was the agent of the plaintiff to receive the proceeds of this sale. We should have stated heretofore that this mortgage and note were turned over by C. E. Taylor to the plaintiff as collateral security for a debt owed by him to the plaintiff, but even finding this to be so does not aid the defendants in their claim that this note and mortgage were paid.

The chattel mortgage heretofore referred to, made to John Morgan, December 1, 1928, was for a past consideration, to wit, land, rent, and feed sold by Morgan to W. C. Taylor; and while  this evidence is not satisfactory, no such chattel mortgage in favor of Morgan was introduced in evidence. It is Morgan's claim that he and W. C. Taylor agreed that the amount due was between $1,000 and $1,100, and in payment of the same, Taylor turned over to Morgan 19 head of cattle, without knowledge or notice, either actual or constructive, on the part of Morgan of the existence of the plaintiff's mortgage.

As to the Mitchells and W. P. Taylor, each claims that he is an absolute owner in good faith of any personal property

which they secured from the defendant W. C. Taylor, by purchase or otherwise, and that their rights are prior and superior to those of the plaintiff, and that the property they obtained was for a valuable consideration, and in good faith, and without notice or knowledge of the mortgage sued on herein. W. P. Taylor specially pleads that he took a chattel mortgage from W. C. Taylor on November 9, 1928, covering all cattle and a number of hogs and horses at that time owned by W. C. Taylor, and that a part of this personal property was covered by plaintiff's mortgage; but that he (W. P. Taylor) took his mortgage without notice or knowledge of the mortgage sued on herein, and alleges that his chattel mortgage is superior to that of the plaintiff.

The evidence shows that Ruth L. Taylor was discharged in bankruptcy, and that W. C. Taylor was adjudged a bankrupt January 14, 1930. By dictation into the record, plaintiff withdrew any claim for a personal judgment against W. C. and Ruth L. Taylor, but alleges, as against the Mitchells, Morgan, and W. P. Taylor, that they claim to have purchased certain of the property described in plaintiff's mortgage; that they were not good-faith purchasers thereof; and that its mortgage is superior to their respective rights. The claims of each of these parties in response thereto has been above set out.

This record seems to be in a hopeless tangle as to identification of property. There is no evidence pointing out any specific property in the hands of any one of the defendants which plaintiff claims is covered by its mortgage. We have the original description in plaintiff's mortgage, but the record shows that plaintiff consented to the public sale heretofore referred to, at which a part of this property was sold. There is nothing whatever in the record to point out the particular items of chattel property that were sold at this public sale, and none of the defendants testify, except Morgan. W. P. Taylor admits, however, that, when he took his chattel mortgage, it covered part of the chattels described in plaintiff's mortgage; but which particular chattels or what articles were in both mortgages we are at a loss to know. There is nothing in the record to show, aside from the admissions of W. P. Taylor above referred to, that any of the property described in plaintiff's petition is now in the hands of any one of the defendants. True, all of the defendants admit that they have certain personal property received from W. C.

Taylor, but in each instance it was received in payment of a past-existing indebtedness.

The chattel mortgage, among other things, contains this provision:

"It is my intention hereby to mortgage all of the property of the respective kinds above described, which I now own or may acquire, together with all increase thereof or additions thereto until the consideration herein named and all other indebtedness to said mortgagee is fully paid. * * * And I further sell and transfer to said mortgagee all grain, feed and hay owned by me on the premises above mentioned, including that which is to be grown on said premises until the indebtedness herein named and all other indebtedness held by the said mortgagee is fully paid."

No attack is made on the validity of this provision of the mortgage, the Mitchells and Morgan admitting that they each received personal property from W. C. Taylor after the plaintiff's mortgage was executed and delivered, of the respective kinds described in plaintiff's mortgage. This admission on the part of the Mitchells, however, does not describe any property in their hands received from W. C. Taylor, and W. P. Taylor stands upon the description in his mortgage.

An unacknowledged or unrecorded mortgage is good as between the parties thereto. *Morse v. Beale,* 68 Iowa 463, 467; *Lake v. Gray,* 30 Iowa 415; *Aultman & Taylor Mach. Co. v. Kennedy,* 114 Iowa 444; *Live Stock Nat. Bank v. Julius,* 187 Iowa 748. Under Section 10015, Code, 1927, an unrecorded chattel mortgage is good as against all persons excepting existing creditors or subsequent purchasers without notice. The fact that this chattel mortgage of the plaintiff's in this case was acknowledged before a notary who had no authority to take such acknowledgment, and later recorded, did not give constructive notice to any person. The recording, therefore, of this improperly acknowledged instrument leaves it in the same shape as though it had not been recorded; and if the defendants herein are "subsequent purchasers" without notice, under the aforesaid section of the statute, plaintiff's chattel mortgage would not be effective against them. We have the question, therefore, of

whether or not these defendants were "subsequent purchasers," within the meaning of the aforesaid Section 10015.

The Mitchells and W. P. Taylor do not testify in the case. Morgan testified that he knew nothing as to the existence of the chattel mortgage at the time the cattle were turned over to him, but the record shows that he and the Mitchells took the property from W. C. Taylor in satisfaction of a pre-existing indebtedness. It also shows that the chattel mortgage given to W. P. Taylor was for a pre-existing indebtedness.

Is one who takes property in satisfaction of a pre-existing indebtedness a "subsequent purchaser," under the aforesaid section of the statute? We have settled this question that he is not a subsequent purchaser in the following cases: *Phelps v. Fockler,* 61 Iowa 340; *Cambria Sav. Bank v. La Nier,* 135 Iowa 280; *Martin v. Fritz,* 194 Iowa 740; *Smith v. Moore,* 112 Iowa 60. Where one claims to be an existing creditor or a subsequent purchaser without notice, he has the burden of alleging and proving such facts as show that he was such creditor or purchaser. *Loranz & Co. v. Smith,* 204 Iowa 35; *Diemer v. Guernsey & Johnson,* 112 Iowa 393; *Zacharia v. M. C. Cohen Co.,* 140 Iowa 682; *Martin v. Fritz,* 194 Iowa 740.

Under these rules it follows that neither of these defendants is entitled to any protection as against the plaintiff's foreclosure.

II. The original decree in this case was signed, filed, and entered of record January 24, 1930, and on the same day, special execution was issued thereon, and on that day, under such ex-

ecution, the sheriff levied on certain specific property and advertised the same for sale. On February 17, 1930, without notice or knowledge or consent of any of the defendants or their attorneys, the trial judge signed and filed what is designated as a "supplemental decree," in which he recited that the court's attention was called to the fact that the language of the decree entered in January, 1930, did not correctly set forth the language of the mortgage declared upon, "and it is hereby ordered that said decree heretofore entered shall stand as the same now appears, excepting only that it is further found, adjudged, and decreed that plaintiff's said mortgage covered all of the property of the respective kinds described in said mortgage which W. C. Taylor and Ruth L. Taylor, or

W. C. Taylor or Ruth L. Taylor, owned on the 28th day of July, 1927, or might acquire, together with all increase thereof or additions thereto.''

Complaint is lodged against this supplemental decree on the ground that the court had no jurisdiction to enter the same at the time it was entered.

Sections 10798 and 10799, Code, 1927, provide for the making of the record of the court proceedings and the signing of the same by the judge. Section 10800 provides for the signing of the record as to entries made in vacation. Section 10801 reads as follows:

''The record aforesaid is under the control of the court, and may be amended, or any entry therein expunged, at any time during the term at which it is made, or before it is signed by the judge.''

The question raised in this case upon which the appellant depends is that, while this power is given under the last-named section, it cannot be exercised without notice to the opposite party. We have numerous decisions in this state in which various loose language has been used in relation to this question. As a general rule, such supplemental decree which changes or varies the original decree in any material particular cannot be entered without notice to the other party. 34 Corpus Juris 246, Section 472. While we may not have announced this rule in direct language, it is the necessary and logical deduction from our pronouncements in the following cases: *Kwentsky v. Sirovy,* 142 Iowa 385; *Perry v. Kaspar,* 113 Iowa 268; *Chicago, I. & D. R. Co. v. Estes,* 71 Iowa 604; *Hawkeye Ins. Co. v. Duffie,* 67 Iowa 175; *McGlaughlin v. O'Rourke,* 12 Iowa 459.

It follows, therefore, that the trend of our decisions has been along the line of the general rule above set out, and we are not disposed to vary therefrom. As heretofore said, the uncertainty in identification of this property leaves us in some doubt as to whether the supplemental decree brought other and different property into the range of leviable property under the original decree. The very fact, however, that plaintiff asked for this supplemental decree would indicate that the change desired by the supplement was material; and, under the peculiar facts of this case, we are disposed to view it as a material change, and

therefore hold, under the general rule, that the court had no right to enter this supplemental decree without notice to the opposing parties. The ruling of the district court will be modified accordingly, and in all other respects shall stand.—*Modified and affirmed.*

MORLING, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.