## Dealers Credit Corp. v. Rex Lumber Co., Inc.

454

*Bloom & Bloom*, for plaintiff.

*Jonathan Allison, Jay W. Troutman,* and *Wayne S. Luce,* for defendant.

GIBSON, P. J., March 29, 1948.—On January 14, 1947, P. & K. Woodcrafting Co., Inc., by William H. Kotar, its vice president, executed and delivered its note to L. P. Melat Construction Co. for the sum of $12,000, payable in 12 monthly installments of $1,050 each; and by the same paper mortgaged to L. P. Melat Construction Co., to secure the payment of this indebtedness, "88149 BM Yellow Pine—4/4 & 8/4—70923 BM Fir 8/4—696 Doors 200 Squares 210 Asphalt Shingles", located on property in possession and control of the mortgagor in the city of Canonsburg, Pa. This paper purports to be executed under the seal of the corporation, in the presence of W. S. MacBurney. The paper was not acknowledged by any one. By an endorsement on the paper, L. P. Melat Construction Co., by L. P. Melat, owner, assigned the note and chattel mortgage to Dealers Credit Corp. The date of this assignment is not given. On January 18, 1947, this paper, containing the installment note and chattel mortgage, was filed in the office of the Prothonotary of Washington County and there entered on the chattel mortgage records.

On October 17, 1947, Dealers Credit Corp. instituted a replevin proceeding against Rex Lumber Co. for the material described in the chattel mortgage, alleging a default in the chattel mortgage and averring that the P. & K. Woodcrafting Co. has "sold, assigned and transferred to the defendant the aforesaid lumber,

doors and shingles and has given possession of the same to Rex Lumber Company, defendant, contrary to the terms of the aforesaid chattel mortgage".

On October 21, 1947, the Rex Lumber Co., having been brought upon the record in the replevin proceeding and alleged to be the owner of the property covered by the chattel mortgage, filed its petition for a rule on L. P. Melat Construction Co. and L. P. Melat, Dealers Credit Corp., and Robert Crawford, prothonotary, to show cause why the chattel mortgage and installment note recorded in Chattel Mortgage Book 2, page 173, and filed as chattel mortgage no. 1265, should not be stricken off, to which rule Dealers Credit Corp. and L. P. Melat individually and as owner of L. P. Melat Construction Co., have filed answers.

This proceeding came on to be heard on the regular argument list on the petition and answers filed. Much of the briefs filed have been taken up with discussion of disputed facts appearing in the petition and answers, and counsel for Dealers Credit Corp. by its brief request that testimony be taken on these disputed facts.

The Chattel Mortgage Act of June 1, 1945, P. L. 1358, which we will hereafter discuss, simply created a new method of securing by means of a record lien any funds borrowed or to be borrowed or any preëxisting indebtedness. The record of that lien was in the office of the prothonotary created by the filing of a chattel mortgage and the required indexing thereof. It thereby became a record of the court of common pleas and consequently came under the control of that court. Therefore, where a lien or judgment appears by a court record, there are two methods open to any party aggrieved to attack that record. One of these is by petition to open where the merits of the proceeding are involved; the other is by motion or petition to strike off where the record is so defective upon its face that

the lien should not have been entered in the first instance. In this latter proceeding, the defect may be ascertained exclusively by an examination of the record, and the court must strike off a lien or judgment where an irregularity or material defect sufficient to justify such action appears on the face of the record. This proceeding to strike off appears to have been in use for a long period of time and appears to have been applied principally to defects appearing on the face of the record: Commonwealth, to use of Dauphin County v. Hoffman, 74 Pa. 105; Post v. Wallace, 110 Pa. 121; Connay v. Halstead, 73 Pa. 354.

As we understand this proceeding, the petition to strike off is determined only from the face of the record concerning which there can be no disputed fact. If the lien record is in compliance with the act authorizing such liens, then the petition must be refused and rule dismissed. If the record is so deficient that the lien should not have been entered, then the lien should be stricken off. So this proceeding raises a very narrow question and that is the only question we dealt with. That question is, on the face of this record, is it so defective that the lien should not have been entered on the records of this court?

The authority for this lien is based solely on statute and aside from the provisions of the Chattel Mortgage Act of 1945 no authority to enter such lien exists.

A question has been raised regarding the appropriateness of the remedy sought. This question was discussed in Delco Ice Manufacturing Co. v. Frick Co., Inc., 318 Pa. 337, regarding a conditional sales contract filed in the office of the prothonotary under the Act of 1925. It was there held that a conditional sales contract, fileable in the office of the prothonotary much the same as the chattel mortgage, was a judicial record and that there was an inherent right in the court to correct its records, where necessary, so long as con-

stitutional rights or statutory provisions are not violated, and if no procedure was provided by the act authorizing the record the court had authority to invent a procedure for the purpose of accomplishing a just result. The court also approved of the procedure by rule to show cause, in the type of case now under consideration, where the defect appears on the face of the record.

The Chattel Mortgage Act of 1945 provides for the giving of security for funds borrowed or to be borrowed or for any preëxisting indebtedness by means of a chattel mortgage upon, generally, any chattel or chattels of any kind or description.

Section 2 of the act provides:

"Any mortgage, executed under and pursuant to this act, shall be in writing and signed, witnessed and duly acknowledged by the mortgagor or his agent duly authorized and constituted," and provides for the method of describing property.

Section 5 of this act provides: "Any chattel mortgage executed pursuant to this act" shall be a lien from the time of filing of the mortgage.

Section 8 of this act provides: "Any chattel mortgage executed pursuant to this act," when filed shall be a lien, "which lien shall be good and valid as hereinbefore provided". This section also requires the prothonotary to keep a chattel mortgage book in which he shall docket each instrument presented to him for filing, giving the names of the mortgagor and mortgagee, the amounts of the indebtedness to be secured, and the premises upon which the chattels are located. The prothonotary is also required to keep a chattel mortgage index in which he shall index the names of the mortgagor and mortgagee and the date of the filing of the chattel mortgage.

Section 13 of the act provides: "Such chattel mortgages shall, except between the parties thereto, take

effect and be valid only from the time of filing as herein provided". This section of the act also provides for a limitation of time during which the lien shall continue and for revival thereof.

It will be noted that the language used by the legislature authorizing this new method of creating a security for debt, includes many times the expression, "executed under and pursuant to this act". This act is the only act authorizing or creating this type of lien, and to successfully create this type of lien the provisions of this act must be strictly complied with. The funds borrowed or the preëxisting indebtedness may be secured if the mortgage is "executed under and pursuant to this act".

In section 2 there are three definite requirements: (1) The mortgage must be in writing and be signed; (2) it must be witnessed and duly acknowledged by the mortgagor or his agent duly authorized and constituted, and (3) the property must be described sufficiently to meet the requirements of the act. Failing in any of these essentials, the transaction does not meet the requirements of the act and the paper is not "executed under and pursuant to this act".

Section 5 providing for the lien on the property described, again limits the creation of that lien to "any chattel mortgage executed pursuant to this act", and if the mortgage is not executed strictly pursuant to this act there can be no lien.

Again, in section 8, where authority for the filing, docketing and indexing of the lien is given, this authority exists only as to "any chattel mortgage executed pursuant to this act".

The paper purporting to be a chattel mortgage which was filed in this case does not comply with the Chattel Mortgage Act in that it has not been acknowledged, and by the terms of the act this is essential. This appears on the face of the record. It needs no further

proof. The fact cannot be disputed. It is a case where a rule to strike off is the proper remedy; in fact, the only remedy available to an aggrieved party.

The Dealers Credit Corp. brought Rex Lumber Co. into this proceeding by instituting replevin proceedings against it, averring that it had purchased and was in possession of the property covered by the chattel mortgage. The Rex Lumber Co., in its petition to strike off, has averred that it is the owner of the property described in the paper purporting to be a chattel mortgage. Dealers Credit Corp. now say that Rex Lumber Co. is not a proper party in a proceeding to strike off the lien on property which Rex Lumber Co. owns. We do not see how it can now take that position. As pointed out, Dealers Credit Corp. brought Rex Lumber Co. into the proceeding and made it a party. The allegation in the pleadings by Dealers Credit Corp. and also by Rex Lumber Co. show that Rex Lumber Co. is a party in interest in that it is the owner and in possession of the property described in the chattel mortgage. Being such owner and in possession, it would appear to be a proper party to attack the validity of the lien created by the chattel mortgage. Under the circumstances, Rex Lumber Co. is a real party in interest. As the record now stands, any property purchased by it from P. & K. Woodcrafting Co., would be subject to the lien of the chattel mortgage, and under the modern trend, as indicated by Pa. R. C. P. 2001 and following, the real party in interest is the proper party to proceed.

It has been suggested that an analogy may be drawn between the type of security device here involved and conditional sales under the Uniform Conditional Sales Act of May 14, 1925, P. L. 722. The analogy fails in various particulars. In the Sales Act: (1) The title to the chattel remains in the seller, notwithstanding possession is delivered to the buyer and it may be attached to real estate; (2) the conditional sales contract or a

verified statement thereof must be filed in the office of the prothonotary where the real estate affected is situated and there docketed and indexed; (3) the contract, in order to entitle it to be filed, must be verified by the oath or affirmation of the seller or buyer or the agent or attorney of either, setting forth certain required facts, or if a statement be filed it must set forth, under oath, certain facts. Under the Chattel Mortgage Act: (1) The title to the property is not in the mortgagee and is not transferred to the mortgagee, but a lien is created which may eventually result in possession and ownership by the mortgagee; (2) the chattel mortgage must be in writing, signed, witnessed and duly acknowledged by the mortgagor or his agent, describing the property upon which the lien is to be created, and this chattel mortgage must be filed in the office of the prothonotary and there docketed and indexed. There are many other differences between the two acts. However, they are analogous in that each must be filed in the office of the prothonotary, each must be docketed and indexed, and each becomes thereby a judicial record: Also as to each, we think the rule applies that the statutory requirements must be strictly complied with, otherwise the instrument is not entitled to be recorded and does not constitute constructive notice.

As to both of them, we think the remarks of the court in Delco Ice Manufacturing Co. v. Frick Co., supra, are appropriate (p. 344) :

"A paper is filed in the office of the prothonotary which strikes directly at the common law right relating to fixtures to real estate. It gives the vendor in that contract a very strong position. It invades the common law. Conditional sales contracts are being used exclusively in the State, and requires purchasers of real estate to go to the prothonotary's office and ascertain if such contracts are filed and if there is a reservation of title in part of the land, viz., the chattel affixed to the

real estate. It is more than an encumbrance which may be divested by sale. It follows the land. It is absolutely imperative then that, before such contracts can be filed, rigid compliance with the law and a speedy and effective remedy should be given purchasers and creditors who are in ignorance of the existence of such contracts."

We think there is a closer analogy between the Chattel Mortgage Act and the Mechanics' Lien Act which has been the subject of much litigation. Under that act, the courts have held that a motion or petition to strike off is the appropriate remedy where the defect is apparent on the record. The lien being a statutory one, substantial failure to comply with the requirements of the statute makes the lien subject to this attack. For the purpose of brevity, we refer to 12 Standard Pennsylvania Practice in the Mechanics Liens. At page 151, this authority states: "The lien claim must show in its face that it is such a one as the statute authorizes. Otherwise, the lien will be stricken off on motion, unless the defect is amendable in nature". Following this, this authority points out many grounds for the striking off of liens, such as defective notice of intention to file a claim, omission of distinction between new work and alterations and repairs, defective statements as to the parties, defective statements of work or material; lumping charges, etc., and cites many cases.

We have followed the rule that where the authority to create a lien exists only by reason of a statute, there must be strict compliance with every material requirement of the statute.

We find no Pennsylvania cases holding that acknowledgment is essential to the admission of a chattel mortgage to the record. However, there are cases in other jurisdictions, viz.: Seacoast Finance Corp. v. Cornell, 104 N. J. L. 24, 138 Atl. 695; Chariton & Lucas Co. Nat. Bk. v. Taylor, 210 Iowa 1153, 232 N. W. 487;

Guarantee State Bank v. Moore, 63 Okla. 133, 163 Pac. 272; Bank of Weiner v. Jonesboro Trust Co., 168 Ark. 859, 271 S. W. 952; Western Type Foundry v. Central Trust Co., 229 Fed. 133.

And now, March 29, 1948, for the reasons above set forth, it is ordered and decreed that the chattel mortgage executed by the P. & K. Woodcrafting Co., Inc., to L. P. Melat Construction Co., under date of January 14, 1947, assigned to Dealers Credit Corp., and of record in this court as chattel mortgage, file no. 1265, docketed in Chattel Mortgage Book 2, page 173, be stricken from the records of this court.