**Alice LAMP, Mabel Ohde and Florence Wegner, Appellees,**

**v.**

**Albert GUTH, as Conservator in the Matter of the Conservatorship of Dora Guth, Infirm, et al., Appellants.**

**No. 54205.**

Supreme Court of Iowa.

Feb. 9, 1971.

Rehearing Denied March 9, 1971.

Leighton A. Wederath and James Furey, Carroll, for appellants.

Edward S. White, Carroll, for appellees; Bruce M. Snell, Ida Grove, of counsel on appellees' brief.

MOORE, Chief Justice.

Seven defendants appeal from the trial court's ex parte order striking certain provisions of a partition decree and the subsequent changes made by the court regarding their interest in the realty involved.

We attempt to briefly state the facts pertinent to the issues presented on this appeal. Henry Guth executed his last will November 20, 1906. He died testate September 29, 1910. He was survived by his widow and ten children, three of his children, Alice, now Alice Lamp; Mabel, now Mabel Ohde; and Florence, now Florence Wegner, were born subsequent to the execution of his will which included these provisions:

"Second: I give and devise unto my beloved wife Dora Guth the use and income

of all my property both real and personal as long as she shall be and remain unmarried. She to pay the taxes, control the same and make all needed repairs thereon."

"Fourth: At the death of my beloved wife Dora, should she remain my widow, my entire estate both real and personal shall be divided equally between my surviving children, share and share alike."

The surviving widow, Dora Guth, took possession and control of the 200 acre farm and personal property in the estate. On July 22, 1912 she was appointed guardian of the person and property of the ten minor children. In September 1912 as guardian Dora sold a portion of the farm to a railway company and invested the proceeds therefrom in an adjoining 65.75 acres. She took title thereto in her own name.

Dora, then 94, died intestate October 19, 1968. She had not remarried. Four of her children predeceased her. Julius was survived by his wife and three daughters. Lora was survived by a son. Alma was survived by her husband and two daughters. Anna was survived by her husband.

Prior to Dora's death some of her children were unhappy about the rent paid by a son then occupying the farm. Questions arose concerning the rights of pretermitted children, survivors, remainderman and the children and spouses of deceased children.

On October 19, 1968, by coincidence the same day Dora Guth died, the three pretermitted children filed an action in partition to get the farm sold and the rights of the many parties determined.

After the funeral of Dora Guth the surviving children and members of the families of the deceased children met in a lawyer's office. Appointments of an administrator of the Dora Guth Estate and of a receiver to rent the farm were discussed. No family settlement was made and the record indicates the question of final division of the assets from the sale of the farm would be left for the court's determination. Later attorney Richard H. Crandall was appointed administrator of the estate of Dora Guth and made a party defendant in the partition action.

Basically for the purpose of getting the farm sold a pretrial conference in the partition action was held May 1, 1969 before Judge David Harris. Counsel for the active parties were present. Some defendants were in default. Being aware of the difficult questions involved Judge Harris "paled and suggested settlement". He later so stated in the record. Following a conference of the attorneys the judge requested Mr. Crandall to prepare a decree.

The same day Mr. Crandall presented to the court a well prepared decree in the partition action. It was signed, filed and duly entered of record on May 1, 1969. In addition to ordering partition, sale of the realty, appointment of a referee and appraisers, it recognized and adjudicated the rights and interests of the surviving children and the members of the deceased children's families. Briefly stated the decree of May 1, 1969 found the proceeds of the sale were to be divided ten ways, per stirpes and not per capita.

On May 27, 1969 plaintiffs, Alice Lamp and Mabel Ohde and defendant, Ray Guth, by their newly employed attorney, Edward S. White, filed a motion for partial vacation and modification of the decree of May 1, 1969. They alleged irregularity was practiced in obtaining said decree. They claimed their attorneys acted beyond their authority. They further alleged the finding of the court with respect to ownership of the land was based on error and mistake and that only those children of Henry Guth who survived Dora Guth were entitled to ownership in the real estate in question.

Within minutes after said motion was filed Judge Harris entered an ex parte order expunging, revoking and setting aside

that part of the May 1 decree establishing the various interests of the parties in and to the real estate involved. He ordered the question of the ownership in and to the realty be determined by the court upon full submission of evidence at a time to be set by agreement of counsel.

On June 5, 1969 the court entered an order for hearing upon the issues of the decree which had been cancelled, revoked and set aside by the order of May 27. 'It' further provided all attorneys of record be mailed a copy of the order for hearing to be held on June 19.

On June 18 defendants, Delores Petersen, Carole Gaer, Myrna Erb, Donald Guth, Edward J. Ewoldt, Audrey Popp and Gloria Thomas filed a special appearance through their newly engaged attorney. They had not previously been represented by counsel. Their special appearance attacked the court's jurisdiction to enter the May 27 revocation and modification. They also attacked the court's jurisdiction to conduct a subsequent hearing on the issue of ownership. The main thrust of their attack was that no notice had been served on them under rule 253, Rules of Civil Procedure.

Judge Harris overruled the special appearances of the above named defendants and thereafter held a hearing on the issues of ownership. The court found only the children who survived at the time of Dora's death took under the will of Henry Guth. In other words division six ways was ordered rather than ten ways. Resultantly members of the predeceased children's families were given nothing under Henry's will.

Those defendants who filed the special appearance have appealed from the adverse rulings of the lower court. They assert the trial court lacked jurisdiction to consider the motion for partial vacation and modification of the May 1 decree as they were not given proper notice and the trial court erred in holding the remainder interests in the real estate which Henry Guth devised to his children were contingent upon the children surviving his widow. We reverse on their first assigned proposition and therefore do not reach the second.

I. Defendants-appellants rely heavily on rules 252 and 253, R.C.P. Rule 252, in part, provides:

"Judgment vacated or modified; grounds Upon timely petition and notice under rule 253 the court may correct, vacate or modify a final judgment or order, or grant a new trial on any of the following grounds:

"(a) * * *

"(b) Irregularity or fraud practiced in obtaining the same;

"(c) * * *."

Rule 253, in part, provides:

"(a) Petition. A petition for relief under rule 252 must be filed in the original action within one year after the rendition of the judgment or order involved. * * *

"(b) Notice. After filing the petition, and also within the year aforesaid, petitioner must serve the adverse party with an original notice in the manner provided in division III of these rules."

These rules, adopted in 1943, were in lieu of long existing statutes containing substantially the same provisions.

It is undisputed defendants-appellants were not served with an original notice as required by rule 253(b).

Appellees rely heavily on sections 140 and 141, chapter 400, Laws of the 62nd G.A.

Section 140 provides: "The record of any court proceedings is under the control of the court and may be amended or any entry therein expunged before it has been signed by the judge or within sixty days thereafter."

Section 141 provides: "Entries made and signed, unless amended or expunged as above provided, may be altered only to correct an evident mistake." These enactments were a part of a general revision of statutes eliminating reference to terms of court. They refer to records and entries of the court clerk.

II. The question of the court's authority and jurisdiction to change the provisions of a judgment entry is not new to this court.

In Hawkeye Ins. Co. v. Duffie, Judge, 67 Iowa 175, 25 N.W. 117 (1885), the lower court had sustained defendant's demurrer, plaintiff elected to stand on his petition and the court entered judgment against plaintiff for costs. Shortly thereafter the court in term time and without notice to defendant permitted plaintiff to withdraw his election to stand on his petition and entered an order setting aside the judgment.

Code section 178, then provided: "The record aforesaid is under the control of the court, and may be amended or any entry therein expunged at any time during the term at which it is made, or before it is signed by the judge."

At pages 177, 178 of 67 Iowa, at page 118 of 25 N.W. this court said: "In the case at bar final judgment had been rendered. Ordinarily, when this has been done, the case is at an end except that a motion for a new trial may be filed within three days thereafter. While it may be the court had jurisdiction of the defendant during such period for the purposes of such a motion, the defendant was not bound to anticipate that the plaintiff would withdraw his election to stand on the petition, or that the court would permit him to do so and file an amended petition, and that the court would set aside the final judgment previously entered. The case having been disposed of by the rendition of final judgment, the court ceased to have jurisdiction over the defend-

ant in the action, and the defendant's attorney was not bound to remain in court, but could well leave as he did. It may be that the order was one that should have been made, and that substantial justice required the court in this instance to do so. But this is not the controlling consideration. The controlling question is one of jurisdiction, and it is evident, if the court did not have jurisdiction of the defendant in the action, that the expunging order is absolutely void."

In Des Moines Union Railway Co. v. District Court of Polk County, 170 Iowa 568, 571, 153 N.W. 217, 218, where the trial court set aside and entered judgment after publication in the Daily Record but without notice by service of an original notice, we say: "Passing for the moment the effect of the publications in the Daily Record and the knowledge by the counsel who had represented the railway company in the earlier proceedings, we think it a well-settled proposition in this state that when a trial court, acting within its proper jurisdiction, has entered judgment dismissing an action the case is to be treated as having been finally disposed of, and such judgment cannot be vacated and the action reinstated for trial without notice to the defendant * * * (Citations)

"Authority of a court to vacate a judgment after the term at which it is rendered is statutory (Code, title 20, chapter 1); and to give the court jurisdiction, the party against whom the motion or application is made must be served with notice after the manner of original notices for the commencement of an action (Code § 4095). Without such service of notice or its acceptance or waiver, or an appearance by the party entitled thereto, an order vacating such judgment is necessarily void."

In Chariton & Lucas Co. Nat. Bank v. Taylor, 210 Iowa 1153, 232 N.W. 487 (1930), a chattel mortgage foreclosure decree was entered and special execution is-

sued. Seventeen days after entry of decree the trial judge, without notice, knowledge or consent of defendants entered a "supplemental decree" materially changing the original decree. Sections 10798 and 10799, Code, 1927, contained provisions almost identical to sections 140 and 141, chapter 400, Laws of the 62nd G.A., supra. A similar contention as that now made by appellees was rejected. This court supported by cited authorities, held the trial judge had no right to enter the supplemental decree without notice to the opposing party. For a like holding see Workman v. District Court, Delaware County, 222 Iowa 364, 269 N.W. 27.

In Windus v. Great Plains Gas, 254 Iowa 114, 125, 116 N.W.2d 410, 416, we reverse the lower court's order overruling defendant's special appearance to an order reinstating a case which had been dismissed for want of prosecution. No notice had been served on defendant. After review of our earlier cases and noting the provisions of Code section 604.41 we say: "The statutes then in force are now embodied in rule 252 and 253, Rules of Civil Procedure. From these cases it clearly appears that the inherent and statutory power of the court to expunge or amend an entry does not include those cases where jurisdiction has been lost by the entry of a final judgment. In such instances relief may be afforded only under the provisions of rules 252 and 253."

In the case at bar defendants-appellants were not served with an original notice of the motion filed May 27, 1969 as required by rule 253(b), R.C.P. The plain mandates of the rule, with ample opportunity to abide by them, were ignored. To permit this would be to abrogate the rule. Claeys v. Moldenschardt, 260 Iowa 36, 45, 148 N.W.2d 479, 485. The lower court was without jurisdiction to entertain said motion or to conduct the subsequent hearing. The court erred in overruling the special appearances. We hold the expunging order of May 27, 1969 must be set aside and regarded as never having been made.

Reversed and remanded for entry of order consistent with our holding herein.

All Justices concur.