MAHASKA COUNTY, IOWA, for the use and benefit of the school fund, v. ALICE M. BENNETT, Appellant.

Judgments nunc pro tunc: EVIDENCE: JUDGE'S NOTES: DOCKET ENTRIES. The minutes in the judge's calendar form no part of the record but they are receivable in evidence, in the absence of a record, as tending to show the judgment actually rendered; and docket entries are likewise admissible.

In this action the evidence is held sufficient to authorize the entry of a judgment *nunc pro tunc*.

Same: TIME FOR ENTERING *nunc pro tunc* JUDGMENT: EFFECT OF ENTRY. The time in which a judgment *nunc pro tunc* may be entered is unlimited save by laches, and when entered relates back to the time the decree was originally rendered for all purposes affecting the parties thereto, and is as effectual as though entered of record at that time.

Same. In this action the *nunc pro tunc* judgment is held to validate the right of the purchaser of the property on execution sale acquired prior to its entry.

Mortgages: FORECLOSURE: DECREE. Although a personal judgment in an action to foreclose a mortgage is unauthorized, still that portion of the decree which settles the amount due, establishes a lien on the property and directs execution and sale thereof is a judgment *in rem*, and is valid.

Same: SHERIFF'S DEED: VALIDITY. A sheriff's deed is presumptive evidence of the regularity of all previous proceedings in the case. So that upon foreclosure of a school fund mortage and sale thereunder, even though the proceedings were not reported to the state auditor or there was a failure to keep the account of school funds in a separate book, as required by law, and even though the sheriff's certificate of sale may have been lost, still the sale to the county, as mortgagee, and the sheriff's deed thereunder conveyed good title, the county not having parted with or lost by redemption its right to the deed.

Same: DESCRIPTION: UNCERTAINTY. Where the notice of a mortgage foreclosure, as in this case, described the property as an "undivided one-half of part of the Northwest Quarter," etc., and the sheriff's deed described it as part of a forty acre subdivision, there was such uncertainty of description as to render the deed void.

*Appeal from Mahaska District Court.*—HON. W. G. CLEMENTS, Judge.

SATURDAY, FEBRUARY 11, 1911.

ACTION to quiet title resulting in decree as prayed. The defendant appeals.    *Affirmed.*

·*W. H. Keating,* for appellant.

·*J. C. Patterson,* County Attorney, for appellee.

LADD, J.—The relief sought by plaintiff is that title to the north thirty-two and fifty-five one-hundredths acres of land in N. W. ¼ S. W. ¼ of section 7, township 75, range 14, be quieted in it, and that a certain tax deed executed to defendant be set aside.    The defendant denied that plaintiff had title, and by way of cross-petition set up a tax title, and prayed that it be quieted in her against the adverse claims of the county.    Upon hearing, decree was entered declaring plaintiff the absolute owner of the premises and finding defendant's tax deed void.    One Gilbert Murphy was owner of the land on April 19, 1901, and obtained a loan of $900 thereon from the school fund, executing a mortgage as security.    Interest not having been paid, foreclosure proceedings were begun March 10, 1903, and from the minutes of the judgment docket and indices it appears that a decree was rendered, but not spread on the records, in which recovery against Murphy and wife for the sum of $1,052.25 was awarded.    Special execution issued, and on December 17, 1904, the land was bid in by the county for $1,164.84.    A warrant was issued by the county treasurer, and after satisfying the costs, the remainder was paid into the hands of the clerk, who about two years afterwards returned it to the treasurer.    But the certificate of sale, if any was issued, was lost, and a sheriff's deed to the county·

was not executed until July 22, 1909. About this time it was discovered that no judgment or decree had ever been entered of record, and a motion for a *nunc pro tunc* order was filed, and Murphy and wife as well as this defendant served with notice thereof. Defendant interposed resistance to this motion, setting up substantially the same objections thereto now raised in her answer and cross-petition, but the court, on hearing, entered the order as prayed reciting the rendition of the decree on April 9, 1903, and directing that it be entered and spread on the records as of that day. No appeal therefrom was taken, but had it been, it would have been of no avail.

To the suggestion that foreclosure must have been waived it is enough to say that the minutes on the judge's calendar in part were "mortgage, default of all defendant's judgment on note, foreclosure of mortgage, attorney's fees, clerk's assess (see decree)," and on the district court record a page shows title of case and number with the words "mortgage decree." One entry in the judgment docket was "nature of judgment, mortgage," and a form of decree signed by the trial judge, but not recorded, was adduced. Notice by publication was in time for the April, 1903, term of court so that in the regular course of procedure, judgment likely would then have been rendered. Though the minutes in the judge's calendar form no part of the record, they are receivable in evidence in the absence of a record as tending to show the judgment actually rendered. *Metzger v. Morely,* 197 Ill. 208 (64 N. E. 280, 90 Am. St. Rep. 158); *Graham v. Lynn,* 4 B. Mon. (Ky.) 17 (39 Am. Dec. 493); 23 Cyc. 844. So, too, the entries on the docket were admissible. *Farmer v. Wilson,* 34 Ala. 75. See *State v. Mobile,* 24 Ala. 701. The evidence was ample to justify the entry of the decree *nunc pro tunc.*

And the time within which such entry may be made is not limited save by laches. Freeman on Judgment, sec-

1. JUDGMENTS NUNC PRO TUNC: evidence: judge's notes: docket entries.

tion 73; *Liddell v. Bodenheimer,* 78 Ark. 364 (95 S. W. 475, 115 Am. St. Rep. 42). The decree

2. SAME: time for entering *nunc pro tunc.* judgment: effect of entry.

having been so entered, it speaks from that date, and for all purposes affecting the parties thereto is as effectual as though then entered of record. As was said in *Graham v. Lynn,* 4 B. Mon. (Ky.) 17 (39 Am. Dec. 493):

The object and effect of such an order is to furnish proper evidence of acts properly done by the court, but not properly exhibited by its record, and such evidence is furnished *nunc pro tunc,* for the very purpose of supporting those acts which, though the proper consequence of a judgment, would seem to be irregular and void, because there is no proper evidence of the judgment. If the judgment be in fact rendered by the court, but not at the time regularly and fully entered, a *fieri facias* in pursuance of the judgment is not void, but voidable only, and capable of complete validation, by afterwards making a proper entry of the judgment on the record, showing when it in fact was rendered, and entering it now for then.

In *Ludlow v. Johnston,* 3 Ohio, 553, 575 (17 Am. Dec. 609), the court said:

There can be no doubt that such an entry may operate so as to save proceedings which have been had before it is made. For instance, a judgment is actually made at one term, but through mistake or negligence is not entered of record. Subsequent to the term, the plaintiff, under the impression that the business had all been correctly transacted, sues out execution. The property of the judgment debtor is levied upon and sold to a *bona fide* purchaser, who parts with his money in good faith. In such case, the court may, with propriety, enter a judgment to be considered as of the term in which it was actually rendered and should have been entered. Such proceeding should be for the furtherance of justice. It would do no injury to the parties concerned, and would secure the rights of an innocent purchaser. This last

is quoted with approval in 1 Black on Judgments, section 136, and both that work and Freeman on Judgments, section 67, lay down the doctrine that except as to the rights of third parties, a judgment *nunc pro tunc* is retrospective, and has the same force and effect, to all intents and purposes, as if it had been entered at the time when the judgment was rendered. In the last-mentioned treatise it is said that "though an execution may have issued . . . when there was nothing on the record to support it, yet the omission is one of evidence and not of fact; and the evidence being supplied in a proper manner, full force and effect will be given to the fact, as if the evidence had existed from the beginning."

In *Doughty v. Meek,* 105 Iowa, 16, this court held that the entry of judgment *nunc pro tunc* validated the issuance and levy of an execution issued before the entry was of record.

In *Jordan v. Petty,* 5 Fla. 326, a judgment was defectively entered, judgment was afterwards entered *nunc pro tunc,* and this was held to relate back as between the parties, and to cure any variance between the judgment as originally entered and the execution issued thereon. Of course, to say that a judgment took effect by legal relation at an earlier day than that at which it was actually entered—existed—is in the nature of a fiction, but solely for the promotion of justice, and we have the authority of Lord Mansfield for saying that fictions of law can never be contradicted so as to defeat the ends and purposes for which they were invented. *Mostyx v. Fabrigas,* Cowp. 161, 167. The design in ordering an entry *nunc pro tunc* is to effectuate justice, and as between the parties such an entry has a retrospective operation so as to support intermediate proceedings conformable with the judgment already rendered and these become as binding on the parties as though the judgment had been previously entered of record. Save, then, as to third persons, the issuance of execution, levy, sale, and delivery of the

3. SAME:

sheriff's deed are to be regarded as valid acts.    See *Ninde v. Clark,* 62 Mich. 124 (28 N. W. 765, 4 Am. St. Rep. 823); *Leonard v. Broughton,* 120 Ind. 536 (22 N. E. 731, 16 Am. St. Rep. 347); *Chichester v. Cande,* 3 Cow. (N. Y.) 39 (15 Am. Dec. 238).

II.    The judgment was personal, but the decree also declared the amount as determined a lien on the premises, and directed the issuance of special execution and sale thereunder to satisfy such amount with interest and costs.    Undoubtedly the judgment insofar as personal was void, as was the portion of the decree authorizing the collecting of any balance after exhausting the property covered by the mortgage. But that portion fixing the amount of the indebtedness and authorizing its collection out of the property mortgaged was *in rem* only and valid.    See *Griffith v. Milwaukee Harvester Co.,* 92 Iowa, 634.

4. MORTGAGES: foreclosure: decree.

III.    If the auditor did not report the sale to the State Auditor as required by section 2855, Code, or failed to keep the account of the school funds in a separate book, as exacted by section 2853, Code, or the clerk withheld the proceeds of the sale about two years before turning them over to the county treasurer, these matters did not impair the title acquired under the sheriff's deed.    Nor is there any ground for saying there was no sale to the county.    The return on the execution so recites, even though the name of the county may have been written in different colored ink and this is corroborated by the salebook.

5. SAME: sheriff's deed: validity.

It is urged, however, that the sheriff might not execute a sheriff's deed on a showing that the certificate of sale has been lost, but must wait to be compelled by suit. Surely no argument is needed to demonstrate that an officer, in the absence of a statute to the contrary, may do voluntarily that which otherwise he might be ordered by the court to do as the outcome of litigation.    The deed was

issued to the original bidder and no more was essential than that the county as purchaser at the sale had not parted with or lost by redemption its right to the deed. Doubt is expressed as to whether any certificate of sale was issued, but no evidence bearing thereon was introduced, and the sheriff's deed "was presumptive evidence of the regularity of all previous proceedings in the case." Section 4064, Code.

IV. The defendant claims protection as a purchaser for value, and insists that she should be accorded the right to redeem by paying the value of the land. In order to have either of these benefits, it must first appear that she has some interest in the land. The only evidence adduced was a tax deed from the treasurer to her and the notice upon which it issued. The description in the deed was as follows: "Part of N. W. 1/4 S. W. 1/4 section seven (7) township seventy-five (75) range fourteen (14) West 5th p. m." The notice described it as "the undivided one-half (1/2) of part of the northwest quarter," etc. Neither of these identify the property sought to be conveyed. What part of forty acres was intended? No one knows. Because of the uncertainty of the description, the deed must be regarded as void. *Armour v. Officer,* 116 Iowa, 675; *Tucker v. Carlson,* 113 Iowa, 449; *McCash v. Penrod,* 131 Iowa, 631.

6. Same: description: uncertainty.

The defendant not appearing to have any interest in the land is not in a situation to claim the right of redemption or to challenge plaintiff's title, and the decree is *affirmed.*