THE CABLE COMPANY, v. CHARLES H. MILLER, Appellant.

**Judgments:** EXCEPTION: CORRECTION OF ENTRY: NUNC PRO TUNC
1 ORDERS. Where a cause was taken under advisement with the understanding that an exception to the judgment would be entered for the losing party, but by mistake the exception was omitted, the court had power at a later term to correct the entry in that respect; and where an exception is actually taken but not shown the court has power to correct it by an order *nunc pro tunc.*

**Sales:** FAILURE TO TAKE POSSESSION: EFFECT. Where the purchaser
2 of a piano, from one to whom the same with others had been consigned for sale, failed to take the instrument into his possession but left it in the stock of the seller until the consignor took possession of the stock, the fact of failure to take possession will not defeat his title, when the consignor had incurred no liability or changed his position on account thereof.

**Same:** APPEAL: CHANGE OF THEORY. Where plaintiff as in this case
3 relied solely upon the contract of consignment as the basis of his claim of right to the possession of the instrument, he could not change his position on appeal and rely upon the failure of defendant to take immediate possession of the same.

**Same:** DELIVERY: SUFFICIENCY. Where defendant purchased a piano
4 from plaintiff's consignee and paid for the same, knowing his apparent authority to make sales, thus obtaining the ownership and right of possession as against the consignor, there was a sufficient delivery, although he permitted it to remain in the consignee's possession until he was ready to take it.

**Same:** CONSIGNMENT SALES: BONA FIDE PURCHASER: UNDISCLOSED
5 AGENCY. Where a consignor of property allows his agent to sell in his own name and act as the principal in relation thereto, the agent has such authority that one dealing with him as a good faith purchaser is protected, even though the property was not immediately delivered to the purchaser, and the consignor cannot retake it from him.

*Appeal from Cedar Rapids Superior Court.*—HON. C. B. ROBBINS, Judge.

Wednesday, September 24, 1913.

Action in replevin to recover possession of a piano. Trial to the court without a jury. Judgment for plaintiff. Defendant appeals.—*Reversed.*

*Dawley & Wheeler,* for appellant.

*M. D. Porter,* for appellee.

Preston, J.—I. Appellee has filed a motion to dismiss the appeal, or affirm the judgment, because, as he claims, no exception was taken by appellant to the judgment. By appellant's amended abstract it appears that at the close of the trial the cause was taken under advisement by the court with the understanding that when the case was decided and judgment rendered an exception would be entered for the losing party. Appellant's counsel were not present when judgment was entered. At a later term the appellant filed a motion to correct the record, to which appellee appeared and filed a resistance. On a hearing the trial court made a finding, from the evidence and his own recollection and knowledge of the facts, that it was understood by the parties, and the court, at the time of the submission, that an exception should be entered for the losing party, and that the exception for the defendant was omitted by mistake. The court made the correction as asked. To this order plaintiff excepted, but has not appealed therefrom; instead, it has moved to strike appellant's amendment to the abstract. If the agreement and understanding between counsel, or the parties, was as the court found, it ought to be lived up to. But the action of the court was authorized by Code, section 244. Or if the exception was in fact taken at the time, but the record failed to so show, the entry could be made *nunc pro tunc.*

1. Judgments : exception : correction of entry : nunc pro tunc orders.

II. November 4, 1908, appellee and one A. J. Schussman

entered into a written contract by which said Schussman was to take pianos on consignment for sale in certain counties in Iowa. The contract provides, substantially, that Schussman shall hold pianos, organs, and other property of appellee upon consignment.

2. SALES: failure to take possession: effect.

It provides certain terms upon which the instruments shall be settled for, and contains an agreement that appellee shall have the right to withhold its consent to sales made by Schussman. Schussman guaranteed the payment of all notes, contracts, or leases taken; agreed to repossess any instrument for which default in payment was made, and upon failure to regain possession of any such instrument pay appellee the full amount due thereon. Soon after this, Schussman opened a music store in Cedar Rapids and transacted his business under the name of the Schussman Music Company. He did a large business, selling as many as twenty-five pianos a month. About one hundred pianos were sold while defendant was in the employ of Schussman. This contract was not recorded. Appellant testifies he did not know of it and never saw it until the trial. There is nowhere in the record any evidence that he knew that the relationship between appellee and Schussman was that of principal and agent, rather than vendor and vendee. Sales were made by Schussman to his customers under written contracts in the name of the Schussman Music Company which contracts were, in some cases, sent to appellees and in others to the banks. Appellee made no objection to the manner of making sales by Schussman. These contracts provided, among other things, that a customer is to pay for his piano to the order of the Schussman Music Company at their office; to convey and mortgage the piano to the Schussman Music Company; states that the piano is the property sold by said Schussman Music Company; agrees not to incumber it without the consent of said company; agrees that the said company may retake the piano; that the contract is subject to its approval; and that said music company is not bound by any provision other than those contained in

the contract. There is no mention in this contract of the Cable Company or of any title to the piano superior to that of the Schussmann Music Company. Appellant knew of these contracts, and used them as a salesman for Schussman. He testifies that during all the time he worked for Schussman the sales of pianos were substantially all made under such a contract, and were allowed to remain permanently with customers if they kept up their payments. The piano in question was shipped by appellee to Schussman November 10, 1910. Defendant was employed by Schussman in March, 1911, as salesman and sales manager at $75 per week and traveling expenses. In June, 1911, appellant bought this piano of Schussman for $425. At that time Schussman owed defendant two weeks' wages and about $10 traveling expenses, which it was agreed should be applied on the purchase of the piano, and the balance was to be paid by applying defendant's salary thereon.

After the purchase by defendant he went East, for a time, and did not then remove the piano from the store, because he had no place to put it, but it was to be removed upon his return. It was the only piano of this description left in the store. It was not separated from the rest of the general stock and no marks placed on it to indicate that it had been sold to defendant, but it was referred to by other employees generally as defendant's piano, and customers coming into the store were told that it was sold. Defendant remained in Schussman's employ until August 4th, and at that time Schussman was owing him $130 after the piano was paid for. No receipts were passed between defendant and Schussman. The sale of the piano was established; witnesses other than defendant testifying in reference thereto and corroborat-. ing defendant. The trial court found that Schussman did orally sell the piano to defendant upon July 1st. On July 21, 1911, Schussman absconded, but it was not then known he would not return. It is admitted he did not pay or settle with plaintiff for the piano. August 4, 1911, plaintiff took

possession of the store, and the goods therein of the Schussman Music Company, and the piano in question. Soon after this defendant took possession of the piano and removed it from the store, and this replevin suit was instituted by plaintiff to recover its possession. The trial court found that the piano was a consignment only for purposes of sale, and was not a conditional sale; that by the terms of the contract between plaintiff and Schussman the consignee had no right to sell the piano or pass title thereto without having first obtained the consent of plaintiff; that it was not removed or separated from the general stock of said Schussman and was taken possession of by plaintiff about August 5, 1911; that at the time of the sale by Schussman to defendant the piano was plaintiff's property; and that defendant by the sale acquired no right or title as against plaintiff. Some minor matters may be disposed of before discussing the more important points. No fraud, bad faith, or collusion on the part of defendant is charged. Appellee seems to rely in this court somewhat on the statute of frauds; but that question was not raised in the trial court by an objection to the evidence on that ground, or otherwise. Appellee raises no question as to the sufficiency of appellant's pleadings. Appellant contends that there was such performance as to take the case out of the statute. Under the circumstances no further attention need be given to this matter.

The fact that defendant did not notify plaintiff of the sale of the piano to him, when plaintiff took possession of it, with the other goods, is not material. Plaintiff was not placed in any different or more disadvantageous position than it would have been if defendant had immediately notified it. Plaintiff was not a purchaser or an attaching creditor. It advanced no money, extended no credit, and incurred no liability by reason of its ignorance of the sale. Nor is the fact material that plaintiff obtained possession of the piano when it took possession of the store on August 4th, for the reasons above given, and further that, if the title passed

to defendant by the sale from Schussman, plaintiff could not divest it by possession alone in the manner in which it was taken.

Furthermore, plaintiff does not, in its petition, rely on this, but does rely on its original contract of consignment. The three points relied upon by appellee in argument are:

3. SAME: appeal: change of theory.

First, that plaintiff took possession of the piano without notice of the sale to defendant; second, that there was no completed sale to Miller and delivery of the piano to him; and, third, that the piano was in Schussman's possession under a consignment contract. The first point has been already referred to. The trial court seems to have planted its decision on two grounds: First, that because the piano was sent to Schussman for sale under a consignment contract Schussman had no right to sell it and pass title to defendant; and, second, that there was not a completed sale to Miller because there was no delivery. The court did not specifically find that there was no delivery, yet in the findings reference is made to the fact that the piano was not removed or separated from the stock, and no marks placed upon it to indicate that it had been sold to the defendant.

We are of the opinion that there was a sufficient delivery. We shall later refer to the question as to whether, under the

4. SAME: delivery: sufficiency.

circumstances, Schussman could make a valid sale; but, if he had such authority or apparent authority, it was not necessary to a completed sale and delivery that defendant should have taken possession of the piano. If he had the right of possession and the right of dominion, it was sufficient.

Appellee relies on *Smith v. Champney,* 50 Iowa, 174, and *Harris v. Pence,* 93 Iowa, 481. We think these cases are not in point, for in them the rights of creditors were involved under what is now section 2906 of the Code, which provides, in substance, that no sale of personal property, where the vendor retains possession, is valid against existing creditors,

or subsequent purchasers without notice, unless a written instrument is executed, acknowledged, recorded, etc.  In the case at bar the evidence clearly shows that it was the intention of Schussman and Miller that the title should pass to Miller. For Miller's convenience, because he did not then have a place to put the piano, it was to remain in the store until he returned from the East, when it was to be removed.  The right of possession and dominion was transferred from Schussman to defendant.  The case falls within the rule laid down in the case of *Welch v. Spies*, 103 Iowa, 389; *Brown v. Wade*, 42 Iowa, 647.  See, also, *Smith v. Bloom*, 159 Iowa, 592, and, as having some bearing, see *Unterharnscheidt v. Insurance Co.*, 160 Iowa, 223.

III.  Appellee's third point is that the contract between plaintiff and Schussman was a consignment contract and conferred only rights to sell in accordance therewith.  The trial court so found, and its conclusion as to the law was that no title passed to Miller in his purchase from Schussman.  Appellee cites *Mowbray v. Cady*, 40 Iowa, 604; *Conable v. Lynch*, 45 Iowa, 84; *Bayliss v. Davis*, 47 Iowa, 340; *Donnelly v. Mitchell*, 119 Iowa, 432; *Budlong v. Cottrell*, 64 Iowa, 234; *Wasey v. Whitcomb*, 167 Mich. 58 (132 N. W. 572).  Some of these cases involve the question of conditional sales.  The court in the instant case found that the sale in question was not a conditional sale, and neither party so claims.  Other of the cases cited involve the construction of particular contracts. It is unnecessary to discuss these cases because appellant concedes in argument that in sales of personal property the rule claimed by appellee obtains, ordinarily, and concedes that as between plaintiff and Schussman it is the rule, but contends that appellee permitted Schussman to deal with its pianos as his own without objection; that it clothed Schussman with the *indicia* of title to its pianos; that appellant was induced by such *indicia* to deal with Schussman and did in good faith deal with Schussman, in reliance thereon, without knowledge

*5. SAME: consignment sales: bona fide purchaser: undisclosed agent.*

of the relations between plaintiff and Schussman; that he was not bound by any secret arrangement between them, but had a right to deal with Schussman as the apparent owner of the property; that Schussman and defendant had the right to agree that defendant's wages should be paid by property which so far as defendant knew and which to him appeared to be Schussman's own property. This is the proposition more strongly relied upon by appellant, and it is not answered by counsel for appellee except to say that it may be conceded the legal propositions are sound; but he says they have no application to the facts of this case. In our opinion the appellant's contention ought to be sustained. Pianos were sent to Schussman by plaintiff to be sold. They were sold from Schussman's store under contracts with Schussman in the name of the Schussman Music Company and were to all appearances sold as the property of Schussman. Suppose, in the two and one-half years Schussman was operating under his contract with plaintiff, he had sold twenty-five pianos a month, or altogether seven hundred and fifty pianos, to his customers, who paid him for them in full as defendant did for his, but without knowledge of the relations existing between plaintiff and Schussman, and Schussman failed to account to plaintiff for the proceeds according to the terms of his contract with plaintiff; could it be claimed that, under such circumstances, plaintiff could rely on its contract with Schussman as to such purchasers and recover back the pianos?

In *McNeil v. Tenth National Bank* (1871) 46 N. Y. 325 (7 Am. Rep. 341) (quoted in Mechem on Sales [Ed. 1901] section 157), it is said:

It must be conceded that, as a general rule, applicable to property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. But this is a truism, predicable of a simple transfer from one party to another where no other element intervenes. It does not interfere with the well-established principle that where the true owner holds out another, or allows him to

appear, as the owner of, or as having full power of disposition over, the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected.  Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance.

Under section 158 of Mechem on Sales is a quotation from a decision rendered by Lord Ellenborough in 1812, in which he says:

If the principal send his commodity to a place where it is the ordinary business of the person to whom it is confided to sell, it must be intended that the commodity was sent thither for the purpose of sale.  If the owner of a horse send it to a repository of sale, can it be implied that he sent it thither for any other purpose than that of sale?  Or if one send goods to an auction room, can it be supposed that he sent them thither merely for safe custody?  Where the commodity is sent in such a way, and to such a place, the principal will be bound and the purchaser safe.

In the case of *Calais Steamboat Co. v. Scudder*, 2 Black (67 U. S.), 372 (17 L. Ed. 282), Van Pelt employed Vanderbilt to construct a steamboat for him.  Vanderbilt lived in California and Van Pelt lived in New York.  Van Pelt furnished the necessary means to Vanderbilt, and Vanderbilt proceeded then to construct the vessel, concealing the fact that he was doing this in reality for Van Pelt.  Later, with the permission of Van Pelt and in fact owing to his express instructions, Vanderbilt enrolled the vessel in his own name.  Afterwards, being in the possession of the vessel and having the *indicia* of ownership in the shape of documentary evidence, Vanderbilt sold the vessel to the plaintiff, the Calais Steamboat Company, for $88,000.  The court says:

Upon this simple statement of the case, it is not to be doubted but that the legal title to this vessel passed to the purchasers; for although as between Vanderbilt and Van Pelt, his principal, or the estate of Van Pelt, the legal title could not avail, beyond a lien for his services or for any advances, yet, as it respects third persons, who have bought in good faith and for a valuable consideration, the rule is different. The question then arise between two innocent parties, and the equity of the case turns against the party who has enabled his agent or any other person to hold himself forth to the world as having not only possession, but the usual documentary evidence of property in the article. . . . The case furnishes a very strong illustration of this principle. All the indicia of property in this vessel in Vanderbilt existed from no fault of his, for he was clothed with it by the express authority of the principal. Van Pelt therefore took upon himself knowingly the responsibility of vesting the property of the vessel in Vanderbilt, as he must have known that it was in his power to deal with it as owner. Besides, he was extensively engaged in the business of steamboats in the waters of California, and doubtless understood, in point of fact, the responsibility he was assuming. Van Pelt died in September, 1853, while this vessel was under contract for construction. The event, however, did not interfere with it, as his legal representatives continued the arrangement the same after as before—furnishing the necessary funds, and carrying on the work until the vessel was finished. They took the place of Van Pelt. In order to weaken this view of the case, it is said that Van Pelt, before his death, changed the agency of Vanderbilt by the appointment of one D. P. Vail. If this were conceded, unless it had the effect to change the apparent ownership of the vessel in Vanderbilt, the circumstances would be immaterial. No secret arrangements between the parties could affect third persons.

In the case of *Heath v. Stoddard*, 91 Me. 499 (40 Atl. 547) (1898), the owner of a piano placed the same in the hands of an agent who was known to be a dealer in pianos. The agent was not given authority to sell the piano, but only to take it to the house of a prospective buyer. The agent sold the piano, and it was held that the purchaser might rely on

the dealer's apparent authority. The court says: In *Pickering v. Burk*, 15 East, 43, quoted by Mellen, C. J.; in *Parson v. Webb*, 8 Me. 38 (22 Am. Dec. 220), Lord Ellenborough says: Where the commodity is sent in such a way, and to such a place, as to exhibit an apparent purpose of sale, the principal will be bound and the purchaser safe. Let us apply this principle to the present case. Spencer was a dealer in pianos. Immediately before this transaction he had been trying to sell a piano to the defendant. There was evidence tending to show that the plaintiff knew these facts. With this knowledge, he intrusted the possession of this piano with Spencer for the purpose of its being taken by Spencer to the defendant's house with a view to its sale. Spencer was not acting merely as a bailee. He did not personally take the piano to the defendant's house, but had it done by a truckman or expressman. Spencer was employed for some other purpose. Whatever may have been the private arrangement between the plaintiff and Spencer or the limit of authority given by the plaintiff, would not a jury have been warranted in coming to the conclusion that the purchaser was justified in believing, in view of all of these facts, that Spencer had authority to sell, and that the plaintiff knowingly placed Spencer in a position where he could assume this apparent authority to the injury of the defendant? We think that a jury might have properly come to such conclusion, and that consequently the instructions were inadequate in this respect; that it was nowhere explained to the jury that a principal might be bound by the acts of an agent, not within his actual authority, but within the apparent authority which the principal had knowingly and by his own acts permitted the agent to assume.

That the rule is recognized in Iowa appears from the following language taken from the case of *Erickson v. Bell*, 53 Iowa, 627:

A person dealing with an agent in regard to personal property intrusted to him by the principal, without knowl-

edge that the property is not owned by the agent, but supposing him to be the owner thereof and the principal in the transaction, will possess all the rights that he would have acquired had the transaction been with the real principal. See Story's Agency, section 444. This rule is applicable to the case before us. It is founded upon the plainest principle of law and justice.

In *Crocker v. Brown*, 40 Iowa, 144, the defendant shipped lumber to an agent by the name of Reed. The agent conducted the business of retailing this lumber in his own name. The plaintiff extended credit to the defendant, relying on his possession of the lumber. The court held that Reed was a general agent for the defendant and that there was no conditional sale such as to require recording within chapter 140, 14th G. A. However, the court gave the following instruction, which was approved by the Supreme Court:

If the plaintiffs furnished and shipped to said Reed lumber in his own name, permitting him to hold himself out to others as the owner of the lumber thus furnished, with a secret understanding that they should be the owners of said property, said Reed holding it in trust for said plaintiffs, such agreement, consent, or understanding, if you should so find, would be in fraud of creditors extending credit without knowledge of the terms of the agreement and understanding between plaintiffs and Reed, and such property would be held liable for the debts thus created. The court says: 'Thus a simple tacit permission upon the part of plaintiffs, with a knowledge that Reed was holding himself out as the owner, and a failure actively to interpose to prevent such a course would, under the instructions given, render the property liable for the debts of Reed. . . . The instruction given, we think, correctly presents the law.

See, also, *Eclipse Wind Mill Co. v. Thorson*, 46 Iowa, 181; *Chickering v. Moulton*, 107 N. W. (Iowa) 434; *Hubbard v. Ten Brook*, 124 Pa. 291 (16 Atl. 817, 2 L. R. A. 823 and note, 10 Am. St. Rep. 585.)

We have discussed the matter on the theory that defendant had no knowledge of the fact that Schussman was the agent of plaintiff. Defendant so testified, and this was not disputed.

The following cases in regard to dealing with persons held to be general agents have some bearing. The tendency of the decisions is to favor parties who have dealt in good faith with agents, believing their authority to be extensive and who would come to grief if the employers were allowed to confine their agents within a scope too narrow. This view is well illustrated by the following language of Judge Weaver in the case of *National Bank v. Dutcher*, 128 Iowa, 413, 142 (Judge Weaver is quoting from a case in 37 Iowa, page 14): ''These men were its servants, working in its interest, and must be presumed to have had the authority usually exercised by other agents under similar circumstances. To say that its agents were vested with the mere naked power to sell and deliver, without any authority to waive or modify any term of the printed contract, would be, as is well said in the *Pitsinowsky* case, 'to establish a snare by which to entrap the unwary, and enable principals to reap the benefits flowing from the conduct of an agent in the transaction of business intrusted to his hands, without incurring any of the responsibilities connected therewith.' '' And see *Palmer v. Cheney,* 35 Iowa, 281; *Steele v. Potthast,* 109 Iowa, 413, 417.

There is no serious conflict in the evidence. The findings of the trial court have the force of a verdict of a jury, as to the facts. We think the trial court erred in its conclusions of law. In our opinion defendant was entitled to the judgment for the possession of the piano, and that he was and is the owner thereof. The record in this court does not show whether defendant gave a delivery bond or who now has the piano. The judgment is reversed and remanded for judgment in harmony with this opinion.—*Reversed.* All of the Justices concur.