Orville A. HEADLEY, Appellee,

v.

Iris Imogene HEADLEY, Appellant.

No. 53633.

Supreme Court of Iowa.

Nov. 12, 1969.

Life, Davis & Life, by Patrick J. Life, Oskaloosa, and Kenneth J. Richardson, Ottumwa, all for appellant.

Johnson, Bauerle & Hester, Ottumwa, for appellee.

SNELL, Justice.

This is an appeal from a denial of an application for entry nunc pro tunc to correct the alimony provisions in a divorce decree. We reverse and remand, with instructions.

The facts giving rise to the problem may be briefly stated.

On July 27, 1967, plaintiff, Orville A. Headley, filed petition in Wapello District Court praying for decree of divorce from his wife, defendant Iris Imogene Headley.

Defendant wife retained counsel who appeared for her and filed perfunctory answer. Counsel for plaintiff and defendant respectively conferred several times. The children of the parties were grown and there were no custody problems. There is nothing in the record to indicate that defendant wife was adverse to being divorced if provision was made for property settlement and alimony. Defendant's counsel, Mr. Swartz, is now dead and we do not have his version of what happened.

At the hearing for a nunc pro tunc order (the matter now before us) counsel for plaintiff testified. We quote excerpts therefrom:

"Mr. Swartz and I had several discussions, the last of which was on November 8th, 1967, according to my notes which I prepared in his office on a yellow piece of paper. In the settlement he gets the divorce, $60.00 per week alimony continues until remarriage or death. This amount subject to modification by the court at once when he no·longer is employed as business representative of the Teamster's Union or its equivalent position. My discussion with Mr. Swartz related to the payment of $60.00 per week to the defendant until such time as she should remarry or should die. However, Mr. Headley was not present at the time of the meeting on November 8th, 1967 when I made these notes, and I went on in the notes and specified [division of property, payment of costs and attorney fees]. * * * I went back to my office and as I stated before it is my recollection I dictated this decree of divorce into the stenorette, and I either mailed or had delivered to my client, Orville Headley, a zerox copy of the decree as it appears filed in this case, with the exception, of course, of the Judge's signature and Mr. Swartz's signature, and the date, and Mr. Headley came to my office either the day of the 8th or morning of the 9th, and stated he had read the decree as I had prepared it, and it was satisfactory with him. We made arangements to be present here in the courtroom as I think 11:30, or something like that, the morning of the 9th, and Mr. Headley, who was in the courtroom that day at that time read as I recall this exact original which is now a part of the court file, and we proved up on the divorce with Mr. Swartz present in the courtroom. I had no further discussion with Mr. Swartz relating to the terms and conditions of the decree, except he approved the same as to form here in the courtroom as I recall it. * *

"Q. * * * From what you have said, Mr. Johnson, as to your version of the facts surrounding this divorce you state that there was an agreement between defendant's counsel and yourself whereby it was agreed that the alimony would continue until she shall remarry or die, is that right? A. That is what Mr. Swartz and I discussed.

"Q. And that was what was decided was it not? A. As between Mr. Swartz and I when I left the meeting of November 8th, 1967, I think the substance of the conversation was as to remarriage and $60.00 per week alimony to continue until remarriage or death of the defendant.

"Q. That is the best of your recollection. Now in this matter, Mr. Johnson, you didn't actually realize the wording we have been talking about until you received the ruling on the defendant's application for contempt citation? A. I did not, but Mr. Headley tells me he did, and that he approved of the terms of the decree based upon what he read. * * *"

Plaintiff husband testified that he read the proposed decree, "every word", and found it satisfactory.

Defendant wife testified that she knew what the terms of the decree were to be. She was to receive $60 per week alimony until she remarried or died. She said she did not have an opportunity to read the decree before it was signed.

On November 9, 1967 at the hearing on plaintiff's petition for divorce defendant neither cross-examined nor offered testimony on her own behalf. The court, Judge Pettit presiding, granted plaintiff a divorce and signed the decree as prepared by plaintiff's counsel. There is no record before us as to what was said at the time.

In two places in the decree words appear that are now claimed to be "an evident mistake." If there was a mistake it is one that because of dictation habits is easily made and as easily overlooked. If the words were used intentionally the result is so unusual as to be startling.

There is no claim that the exact wording was ever specifically called to the attention of Judge Pettit.

One paragraph in providing for division of real estate in the decree says:

"It is further hereby ordered, adjudged and decreed by the court that the *defend-*

*ant,* Iris Imogene Headley, is the sole and absolute owner in fee to the exclusion of all rights or interests of the *defendant, Orville A. Headley,* therein of the following described real estate, to-wit, situated in Ottumwa, Wapello County, Iowa: * * [description of real estate]" Emphasis added.

Later in fixing alimony the decree says:

"It is further hereby ordered, adjudged and decreed that alimony is hereby awarded to the defendant, Iris Imogene Headley, in the amount of $60.00 per week, commencing with the week beginning on November 13th, 1967 and payable on Friday of each week into the office of the Wapello County, Iowa, clerk of court. It is ordered that this alimony shall be paid by the plaintiff to the defendant until such time as the *plaintiff* shall remarry or shall die, whichever shall first occur." (Emphasis added)

On December 19, 1967 plaintiff asked the court for permission to remarry. Permission was granted. Plaintiff remarried on December 24, 1967, less than 7 weeks after his divorce.

On November 17, 1967 plaintiff wrote defendant asking defendant to accept $30.-00 per week alimony instead of $60.

Defendant did not accept but plaintiff made weekly payments of $30 even after his remarriage. Payments continued until defendant started proceedings to collect $60 per week. Plaintiff then quit paying.

Plaintiff testified:

"I knew $30.00 per week wasn't what I agreed to until I remarried. I continued on paying 30, I might still be paying it if she left me alone, but she garnisheed the checking account, my wife's CD February 24th, and I stopped my payments."

On July 3, 1968 application was filed and on July 31, 1968 hearing before Judge McGiverin was had on defendant's application for order nunc pro tunc. This was 8 months after the divorce was signed.

I. Except for the decree itself there is nothing before us to show the judgment or intent of the trial judge.

There is no claim that any agreement or understanding of the parties was binding on the court.

Judge McGiverin, before whom this nunc pro tunc application was tried, was placed in an almost impossible position of having to decide an important matter without benefit of the only evidence that under the circumstances in this case would be material.

Section 622.12, Code of Iowa, provides:

"Judge as witness. The judge of the court is a competent witness for either party, and may be sworn upon the trial. In such case it is in his discretion to order the trial to be postponed or suspended, and to take place before another judge."

In State v. Harbour, 240 Iowa 705, 710, 37 N.W.2d 290, 293 a nunc pro tunc proceeding, we said after quoting the statute:

"And it has been the general practice in this jurisdiction that the judge who made the order hear and determine applications to correct it. [Citations] 'The proceedings adopted for such correction are not strictly adversary in their character. They are intended as a mere aid to the memory of the trial judge to make the record conform to the truth * * *.' * *

"The correction was sought to make the record entry conform to the actual pronouncement of the court, not to evidence a change in the decision itself. Such proceedings are clearly within the inherent power of the court and the existing statutes are merely cumulative. [Citations]"

We then quoted from 126 A.L.R. 978, as follows:

"Although an error in a judgment, order, or decree was originally made by an attorney when preparing the same for the signature of the judge or clerk, it may none the less be a 'clerical' error."

II. Section 604.38, Code of Iowa, provides:

"Preparation and signing of record. The clerk shall from time to time make a record of all proceedings of the court, which, when correct, shall be signed by the judge."

Section 604.39 as enacted by the 62nd General Assembly relates to delayed signing of the complete record.

There is nothing before us to show whether or when the complete record was signed but the trial court apparently assumed or heard evidence that it had been done and more than 60 days prior to the nunc pro tunc proceedings.

Section 604.41, Code of Iowa, as enacted by chapter 400, section 140 of the Acts of the 62nd General Assembly is as follows:

"The record of any court proceedings is under the control of the court and may be amended or any entry therein expunged before it has been signed by the judge or within sixty days thereafter."

The sixty-day provision replaced the language "at any time during the term at which it is made" in the antecedent statute.

Section 604.43, Code of Iowa, in the words enacted by chapter 400, section 141, 62nd General Assembly, is as follows:

"Entries made and signed, unless amended or expunged as above provided, may be altered *only to correct an evident mistake.*" (Emphasis added)

█ It thus appears that a record entry may be much more easily amended within 60 days after being signed by the judge than thereafter. After 60 days a record entry may be altered only to correct an evident mistake.

The trial court, Judge McGiverin presiding, reviewed the authorities and evidence presented and concluded: "Assuming for the purpose of discussion that a 'mistake' was made, it was not an '*evident* mistake'."

■ As noted, supra, Judge McGiverin was placed in an impossible position. He was asked to grope blindly and determine whether the record correctly reflected the judgment of Judge Pettit. It is not the purpose of nunc pro tunc to correct a mistake or misunderstanding of litigants. It is not for the purpose of correcting judicial thinking, a judicial conclusion or mistake of law. These well established rules are succinctly stated in General Mills, Inc. v. Prall, 244 Iowa 218, 225, 56 N.W.2d 596, 600, as follows:

"The function of a nunc pro tunc order is not to modify or correct a judgment but to make the record show truthfully what judgment was actually rendered—'not to make an order now for then, but to enter now for then an order previously made.' [Citations]"

Except when a case is taken under advisement by the trial court it is customary for the judge to render his decision and say that a decree prepared pursuant thereto will be signed. In the case at bar we might surmise and speculate but we do not know what was done. At times assumptions are necessary and justified but they should not be relied on needlessly or unnecessarily.

Judge Pettit was and still is a judge in the second district.

■ III. Section 604.43, (chapter 400, section 141, Laws of the 62nd General Assembly), set out in full above, only operates as a limitation on the inherent common law power of the court to cause the record to speak the truth after that record has been made and signed.

■ Though the apparent assumption made by the court below was that the decree had been spread of record and the record signed, this does not appear as a certainty in the record before us. It is true that Judge Pettit had signed the decree, after which he caused it to be filed. These acts are not germane to section 604.43.

McConnell v. Avey, 117 Iowa 282, 285, 286, 90 N.W.2d 604.

■ As we are unable to determine whether the acts prerequisite to the applicability of section 604.43 had been performed when the correction was sought, it will be necessary on remand to make the relevant inquiries on this point. We have indicated that amended section 604.43 has worked no substantive change in the court's inherent power in the respect now being considered. The only change pertains ·to the period with respect to which the time of entry and signing must be computed. It follows, therefore, that the prior cases dealing with the substantive power to correct have been left intact. As our prior cases illustrate, an "evident mistake" need only be shown where entry and signing have occurred; corrections sought prior to that time may be made as the judge shall direct. See McConnell v. Avey, supra, Freshour v. Freshour, 233 Iowa 1144, 11 N.W.2d 375, Robbins v. Neal, 10 Iowa 560, Shepherd v. Brenton, 15 Iowa 84, 13 Iowa Law Review 241 at 250, Fuller & Co. v. Stebbins, 49 Iowa 376.

■ The distinction, then as now, is this: The power of the court to cause the record to conform to the judicial pronouncement is inherent, and is not affected by the mere lapse of time; before entry and signing, the power is exercisable as the judge may direct; thereafter, the power is no less inherent, though its exercise is limited to correction of "evident mistakes."

IV. On remand, should it be determined that section 604.43 applies, then the court must, of course, inquire whether the mistake alleged was truly an "evident mistake."

Our court in 1859 observed: "If the correction may be made at a second, or later term, then, of course, the mistake would have to be made more and more evident and manifest, and the court should be fully and entirely satisfied that no prejudice could result therefrom." Hurley

v. Dubuque Gas Light and Coke Co., 8 Iowa 273, 276. One hundred and ten years have failed to impugn this salutary principle.

■ Whether there was a "mistake" depends ultimately upon the judicial intention; whether the record is "evidently" at odds with that intention, is likewise dependent, the dependency in both instances being proportionate to the required quantum of proof. The oral testimony before Judge McGiverin was silent as to Judge Pettit's intention; and the impossible position alluded to above was resolved by denying the order.

The proceedings below do not, however, indicate a mere failure of proof on the relevant issues; rather the issues proved were not relevant. On remand, therefore, the parties should address themselves to what the court intended rather than what the parties thought the court intended.

Although evidence appearing in the record itself is, of course, unquestionably competent to show the existence of an "evident mistake", our cases have allowed corrections to be made solely on the basis of non-record evidence. See Hurley v. Dubuque, supra, State v. Crosby, 67 Iowa 352, 25 N.W. 279, Snyder v. Fahey, 183 Iowa 1118, 168 N.W. 117, City of Keokuk v. Schultz, 188 Iowa 937, 176 N.W. 946, Mahaska County v. Bennett, 150 Iowa 216, 129 N.W. 838, Murnan v. Schuldt, 221 Iowa 242, 265 N.W. 369. In at least two instances we have allowed such corrections upon the basis of parol testimony alone. Cable Co. v. Miller, 162 Iowa 351, 143 N.W. 94, State v. Harbour, supra, and see also Cook, "Corrective Entries Nunc Pro Tunc [II]," 13 Iowa Law Review 426, 433.

We must, therefore, remand this case for hearing and determination by Judge Pettit or after benefit of his testimony. We, of course, do not intimate what may be the proper disposition of this application. Our court has long declined to order correction of the records of the district courts. See e. g. Ormsby v. Graham, 123 Iowa 202, 98 N.W. 724.

V. That this court may properly remand in cases such as the present is supported by abundant authority. See, e. g., Byington v. Buckwalter, 7 Iowa 512, Hansen v. Kaperonis, 243 Iowa 1257, 55 N.W. 2d 284, Lessenger v. Lessenger, 258 Iowa 170, 138 N.W.2d 58, 5 Am.Jur.2d, Appeal and Error, sections 962, 972 and 974, 3 Am.Jur., Appeal and Error, sections 1210, 1211, and 1215.

Reversed and remanded with instructions.

All Justices concur.