Donna M. ASH, Appellee,

v.

Hubert R. ASH, Appellant.

No. 53637.

Supreme Court of Iowa.

Dec. 9, 1969.

Mitchell, Mitchell, Murray & Goode, Fort Dodge, for appellant.

Kersten & Opheim, Fort Dodge, for appellee.

BECKER, Justice.

This case reaches us as an appeal from judgment entry modifying a decree of divorce. The parties were divorced on September 22, 1966. The decree incorporated by reference a stipulation designed to dispose of the parties real and personal property. Plaintiff-wife filed application for modification of the decree on March 19, 1968 claiming a mistake in the stipulation and thus in the decree. She seeks modification under section 598.14, Code 1966, and alternately such other relief as would be equitable under the circumstances. We reverse.

At the time of the divorce the parties sought by stipulation to divide their holdings as nearly equally as possible. The stipulation referred to accomplished this to their apparent satisfaction. The present controversy arises out of provisions of the stipulation relating to a 158 acre farm.

Plaintiff claims a mistake was made because the legal description in the stipulation encompassed 160 acres, not the 158

acres actually owned by Mr. and Mrs. Ash. The other two acres had been sold by the parties for adequate consideration to Mrs. Ash's parents several years before. Thus the stipulation contemplates conveyance of 80 acres to Mrs. Ash but the parties only own 78 acres of the east half of the quarter section.

Division of the farm was complicated by the presence of a set of farm buildings on the west half of the acreage and by a mortgage of $8000 which carried over as a lien against the farm after exhaustion of funds from the sale of other property. It was agreed that Mr. Ash, who would receive the farm buildings with his share, would assume and pay the balance of the mortgage. Other complicating factors were the imminent extension of relocated highway 20 near or through the property, the property's near location to the city of Fort Dodge, Iowa and to a subdivision of that city.

After the divorce, while the parties and their attorneys were trying to implement the stipulation, it became apparent plaintiff would get less than an exact half of the farm in question. Other matters of disagreement centered on a check for beans grown on the farm and plaintiff's refusal to sign some corporate stock transfers. These latter frictions are unimportant to this controversy except insofar as they account for the acrimony that developed between the parties. The acrimony effectively prevented any settlement of what is otherwise a minor altercation. This case would not justify extended discussion except for the involvement of the propriety of the court's action in changing the judgment some 18 months after entry.

Mrs. Ash testified, "The original idea was to divide the acres equally. * * * I believe a survey was to be made too, and that was when it suddenly dawned on us that I was not getting an equal share of 80 acres as he would get because my mother was on my side of the half, so to speak."

Arthur H. Johnson, Mrs. Ash's then attorney, testified he knew about the two-acre shortage but he simply forgot this fact. He would not have drafted the deeds as he did if he hadn't forgotten the two-acre shortage. Thus, because as the deeds were drafted, two acres were conveyed that the parties didn't own.

Mr. Mitchell, Mr. Ash's attorney, acknowledged he at all times assumed the plot to be divided was 160 acres but he was the only person who had no prior knowledge of the earlier conveyance of two acres. He felt the parties knew of the two-acre shortage and dealt accordingly. He did not feel the intent was to accomplish a 50–50 division of this land because his client was assuming an $8000 mortgage which made the division of this property unequal. He acknowledged an overall 50–50 division was attempted. Mr. Mitchell did not think there had been a mutual mistake.

Mr. Ash gave his version of the matter. He wanted the west 80 acres. He knew of the prior conveyance of two acres from the east 80 acres and this knowledge did not leave his mind. He would not have signed the stipulation if he did not get the full west 80 acres and both Mrs. Ash and her attorney knew the east half had to be short two acres. He said nothing to his attorney about the shortage of two acres because the matter never came up.

There is much additional testimony, particularly about the efforts of the parties to settle the matter. Two avenues were explored: one, to run the boundary so each got 79 acres, or, two, to have Mr. Ash pay Mrs. Ash a sum ranging from $500 to $900 for the extra acre. Neither avenue was successful.

The trial court found it could not modify the decree under authority of section 598.-14, Code, 1966, because there had been no subsequent change of circumstances. However, it found there had been a mutual mistake which equity and good conscience ought to correct. It found the court had

inherent equitable power to correct the judgment. It held defendant ought not be ordered to transfer an acre to plaintiff but a payment of $750 constituted an equitable solution and so ordered. We disagree.

■ I. We first note the trial court was correct in rejecting modification under section 598.14. Since no substantial change in circumstances was shown, the section does not apply.

II. Neither plaintiff nor the trial court relied on section 604.41 or section 604.43, Code, 1966. The former section allows the court to correct the judgment before it has been entered of record and at any time within sixty days thereafter. The latter section allows subsequent modification "only to correct an evident mistake." We considered the effect of these sections on the court's power to correct a judgment in a divorce case in Headley v. Headley, Iowa, 172 N.W.2d 104 (opinion filed November 12, 1969). We do not consider these sections here. The sections were not relied upon or argued. We do not view the present problem as involving the type of evident mistake referred to in section 604.43 and relied upon in Headley v. Headley, supra.

III. The trial court cited 49 C.J.S. Judgments § 341, pages 690, 691 to justify its action: "On a showing of proper circumstances, and when required by the ends of justice, appropriate relief against a judgment may be had in equity, the power of equity in this connection being inherent, and existing irrespective of any statute authorizing such relief. A bill attacking a judgment is not regarded with favor by the courts, and will lie only in exceptional cases. Such relief may be had, not of right, but in the exercise of a sound legal discretion, and each case must stand on its own peculiar merits."

The principle upon which the trial court relied is recognized in our prior cases. Shaw v. Addison, 236 Iowa 720, 18 N.W.2d 796; Abell v. Partello, 202 Iowa 1236, 211 N.W. 868; see George B. Frazer, Reopening of Judgment by Plaintiff, 42 Iowa L. Rev. 221. But as noted in Abell v. Partello, supra, loc. cit. page 1241, 211 N.W. page 870: "Clearly, it [a court of equity] will not exercise its power except upon a strong showing of equitable considerations."

■ The proceeding below was tried as an equitable matter and so presented here. We review the matter de novo. Rule 334, Rules of Civil Procedure. We are reluctant to reverse the trial court's modification in this case but find insufficient equitable considerations to justify a change in the property settlement. This is particularly true where the change involved a substitution of money judgment for what was originally decreed as a division in kind.

In this case it is not clear the mistake was shared by both parties. Nor is it clear what kind of solution would have been worked out had the absence of two acres been discussed and made a subject of bargaining. The result of the mistake, if a mistake occurred, affected less than two percent of the property being divided in the particular paragraphs of the stipulation. Eighteen months passed from the entry of judgment to the application for modification of the decree.

■ Defendant urges the need for stability of judgment entries as a reason for refusal to modify the decree at this time. This is probably the principal reason for reluctance to disturb a judgment once entered and allowed to remain of record beyond the statutory period for reconsideration. While such reasoning does not rob the court of power to act where fraud or mistake has been shown, it does militate against the exercise of equitable power except where cogent reasons of justice require modification of the decree. We discover no such cogent reasons in this record.

Reversed.

All Justices concur, except REES, J., who takes no part.