**STATE of Iowa, Appellant,**

v.

**Richard Gail STEFFENS, Appellee.**

**No. 62264.**

Supreme Court of Iowa.

Aug. 29, 1979.

Thomas J. Miller, Atty. Gen., Stephen P. Dundis, Asst. Atty. Gen., and Ray Yarham, Cass County Atty., for appellant.

Richard G. Howard, Atlantic, for appellee.

HARRIS, Justice.

The State brought this action to establish that Richard Gail Steffens is an habitual offender under section 321.555, The Code 1979. We briefly explained this provision in a footnote in *State v. Onstot*, 268 N.W.2d 219, 219 (Iowa 1978).

Defendant moved to dismiss the proceeding on the ground his license had already been suspended for 90 days under another section, 321.210(3), The Code 1979 (authority to suspend—point system). Defendant argued the suspension under section 321.210 constituted an election of administrative remedies which precluded this section 321.-555 proceeding.

On January 4, 1978, the trial court overruled the motion to dismiss, holding that the two sections do not constitute inconsistent procedures requiring an election of remedies. In the same ruling the trial court adjudged defendant to be an habitual violator within the meaning of section 321.555. Defendant's driving privileges were ordered " . . . suspended for a period of one year from this date."

No appeal was taken from this final judgment and it became the law of the case. *Avoca State Bank v. Merchants Mut. Bonding Co.*, 251 N.W.2d 533, 539 (Iowa 1977).

On June 26, 1978, the trial court entered a nunc pro tunc order. After reciting the January 4 ruling, the order stated:

It has come to the attention of the Court that it intended to give the Defendant a credit of ninety (90) days toward that one (1) year suspension by reason of the Defendant's privileges having been suspended for a ninety (90) day period effective July 25, 1976, and it appearing that said ninety (90) day suspension was for at least some of the same offenses relied upon for the suspension sought herein under Section 321.555, The Code.

IT IS THEREFORE ORDERED that the Court's Ruling herein under date of January 4, 1978, is modified to provide

that the Defendant's driving privileges are suspended *for a period of nine (9) months from January 4, 1978,* instead of for a period of one (1) year from said date as originally ordered.

On July 21, 1978, the State filed its notice of appeal.

I. This case is to be distinguished from *State v. Onstot, supra,* in which we dismissed the State's appeal as untimely. In *Onstot* a nunc pro tunc order was entered by the trial court several months following the entry of an order of suspension. We held that the time for filing notice of appeal was not extended by the nunc pro tunc order.

The difference between this case and *Onstot* lies in the fact that here there is a considerable variance in the nunc pro tunc order and the judgment it "corrected." One of the State's assignments of error is the claim that the trial court lacked the authority to enter the nunc pro tunc order because of the difference in the period of suspension. In *Onstot,* 268 N.W.2d at 220, we explained that a nunc pro tunc order can be entered not to change a prior order but only to show what took place in the prior order. *See also Feddersen v. Feddersen,* 271 N.W.2d 717, 718–719 (Iowa 1978).

In this case the original order was clear and unambiguous. It called for a period of suspension in exact accordance with statute. There was no reason for the State to appeal until it was apprised, by the order of June 26, 1978, that the trial court was attempting to suspend the license for less than the one year provided by section 321.555.

II. We think the State is right in its view that the trial court was without authority to change the suspension period by the nunc pro tunc order. Such a change does not qualify under the test for nunc pro tunc orders: to show *now* what was done *then.* Rather, we think the challenged order here attempts to *change* what was previously done. There can be *no serious claim* that the trial court, when it entered the January 4 decree, was oblivious of the earlier 90-day suspension. The earlier suspension was the subject of the first part of the decree. The decree was most explicit on the length of the suspension: "one year from this date." In the nunc pro tunc order the trial court recited it had intended on January 4 to give 90-days' credit on the suspension. We, of course, take this as a verity of the trial court's intentions. But this is not the same as saying it was what the trial court did.

A nunc pro tunc order is not an alternative to the established procedures to alter, vacate, or modify judgments under our procedural rules. A nunc pro tunc order is not appropriate to rescue subjective judicial intentions when a judge failed in any way to act on those intentions in entering judgment. Notwithstanding the fact they are sometimes misinterpreted, the cases are clear that a nunc pro tunc order is not available to correct a judicial, as distinguished from a clerical, error. The rule is well explained as follows at 46 Am.Jur.2d *Judgments* § 201, at 443–44:

> The general rule is that an amendment of the record of a judgment, and a nunc pro tunc entry thereof, may not be made to correct a judicial error involving the merits, or to enlarge the judgment as originally rendered, or to supply a judicial omission or an affirmative action which should have been, but was not, taken by the court, or to show what the court might or should have decided, or intended to decide, as distinguished from what it actually did decide. The power of the court in this regard is to make the journal entry speak the truth by *correcting clerical errors and omissions, and it does not extend beyond such function.* Although grounds may exist for opening, *modifying, or vacating the judgment itself, yet in the absence of such grounds, the court may not, under the guise of an amendment of its records, revise or change the judgment in substance and have such amended judgment entered nunc pro tunc.* The nunc pro tunc order must conform to and be no broader in its

terms than the judgment originally rendered. [Footnotes omitted.]

*See* 49 C.J.S. *Judgments* § 238.

It is now argued that the general principle is at odds with our own cases, especially with *Headley v. Headley*, 172 N.W.2d 104 (Iowa 1969). But in *Headley* the concession was made that:

It is not the purpose of nunc pro tunc to correct a mistake or misunderstanding of litigants. *It is not for the purpose of correcting judicial thinking, a judicial conclusion or mistake of law.* These well established rules are succinctly stated in *General Mills, Inc. v. Prall*, 244 Iowa 218, 225, 56 N.W.2d 596, 600, as follows:

"The function of a nunc pro tunc order is not to modify or correct a judgment but to make the record show truthfully what judgment was actually rendered—'not to make an order now for then, but to enter now for then an order previously made.' . . ."

172 N.W.2d at 108 (emphasis added).

It is not a proper function of a nunc pro tunc order to correct or change judicial acts on the basis of the judge's subjective intentions. In its original order the trial court set to the exact day the period of suspension. It did not give credit for the earlier 90-day suspension and the omission amounted to an express refusal to do so. It was error for the trial court to change the order of suspension by an order nunc pro tunc.

The judgment of the trial court is therefore reversed and the case remanded for an order reinstating the one-year suspension.

REVERSED AND REMANDED.

LeGRAND, J., concurs.

McGIVERIN, J., concurs in result.

McCORMICK and UHLENHOPP, JJ., concur specially.

REYNOLDSON, C. J., and REES and ALLBEE, JJ., dissent.

LARSON, J., takes no part.

McCORMICK, Justice (concurring specially).

When the court finds a defendant is an habitual offender, section 321.559 provides "the court shall by appropriate judgment direct that such person not operate a motor vehicle on the highways of this state for the period specified in section 321.560." Under section 321.560 a license shall not be issued to such offender "for a period of one year from the date of judgment."

The license is revoked, not merely suspended, and the period of revocation is mandatory. *See State v. Nichols*, 264 N.W.2d 765, 766 (Iowa 1978). Therefore the trial court lacked authority to shorten the period of revocation by allowing credit for an earlier suspension. I would reverse on this basis.

UHLENHOPP, J., joins in this special concurrence.

REYNOLDSON, Chief Justice (dissenting).

I respectfully dissent.

As a preliminary matter, it should be noted the nunc pro tunc order in question apparently was signed *ex parte*, which does not conform to our case law. *Chariton & Lucas County National Bank v. Taylor*, 210 Iowa 1153, 1160, 232 N.W. 487, 490 (1930); *Snyder v. Fahey*, 183 Iowa 1118, 1123, 168 N.W. 117, 119 (1918). For a reason it must deem sufficient, the State has not raised this issue at any stage in this proceeding. We therefore should address the issues it does raise.

The majority concedes trial court intended at the time of the initial ruling to provide a 90-day credit on the section 321.555 one-year suspension, even though the order signed failed to carry out his intention. The issue is whether omission of this credit may be supplied by a nunc pro tunc order. I would hold that it could and proceed to the merits of the appeal.

That an order may be changed which does not express the intention of the court when the order was entered is no longer open to question. In *Headley v. Headley*,

172 N.W.2d 104 (Iowa 1969), the decree entered by trial Judge Pettit awarded alimony to the wife and provided it should be paid until the *husband* remarried or died. Eight months later the former wife filed application for order nunc pro tunc to have the decree corrected to provide the alimony payable until *her* remarriage or death. The hearing on the application was before Judge McGiverin who, assuming a mistake was made, held it was not an "evident mistake" so as to permit correction under the provisions of what is now section 602.17, The Code.

When the decision was appealed, this court noted there was no evidence of what was done or said when the decision was made. It observed that Judge McGiverin "was placed in an almost impossible position of having to decide an important matter without benefit of the only evidence that under the circumstances of this case would be material." *Headley,* 172 N.W.2d at 107. The opinion further stated:

> Whether there was a "mistake" depends ultimately upon the judicial intention; whether the record is "evidently" at odds with that intention, is likewise dependent, the dependency in both instances being proportionate to the required quantum of proof. The oral testimony before Judge McGiverin was silent as to Judge Pettit's intention; and the impossible position alluded to above was resolved by denying the order.
>
> . . . On remand, therefore, the parties should address themselves to what the court intended rather than what the parties thought the court intended.

> We must, therefore, remand this case for hearing and determination by Judge Pettit or after benefit of his testimony.

*Id.* at 109.

Contrary to the majority's holding today, the *Headley* court determined a prior order *may be changed* to conform to the intent of the judge who enters it. It held the essential proof is the intention of that judge, to be included in his or her findings if he or she hears the nunc pro tunc application, or

supplied by his or her oral testimony if the hearing is before a different judge. It is this finding or testimony which may make the mistake "evident." *See also State v. Harbour,* 240 Iowa 705, 709–10, 37 N.W.2d 290, 293 (1949).

The stringent requirements implicit in the majority decision are not supported by other well-reasoned decisions of this court. A nunc pro tunc order is proper to make the record conform to an adjudication inferentially made but which by oversight or evident mistake was omitted from the record. *See Jersild v. Sarcone,* 163 N.W.2d 78, 81 (Iowa 1968). There is no requirement that there be some written evidence or a calendar entry which conforms to the provisions sought to be provided by the application for nunc pro tunc order. *Harbour,* 240 Iowa at 714, 37 N.W.2d at 295 ("We conclude the court did not err in ordering the correction of the record on parol evidence only and that no written evidence, entry or note was essential."); *Chariton & Lucas County National Bank v. Taylor,* 213 Iowa 1206, 1209, 240 N.W. 740, 741 (1932); Cook, *Corrective Entries Nunc Pro Tunc,* 13 Iowa L.Rev. 241, 433 (1928) ("It would appear that the trend of the Iowa decisions is toward the general rule that parol evidence may be resorted to to establish the terms of the decision to which it is sought to make the record conform."). Nor is it essential that there be some oral pronouncement from the bench when the original decision was made which conforms with the change sought. *Headley,* 172 N.W.2d at 106; *Chariton & Lucas County National Bank v. Taylor,* 213 Iowa at 1209, 240 N.W. at 741.

We have always held courts have inherent power to make orders nunc pro tunc, and to modify their records so as to make them speak the truth. *State v. Frey,* 206 Iowa 981, 984, 221 N.W. 445, 447 (1928). Existing related statutes have been characterized as "merely cumulative" to this inherent power. *Harbour,* 240 Iowa at 710, 37 N.W.2d at 293. Enactment of the Iowa Criminal Code brought the repeal of section 602.15 (record may be expunged or amended before it has been signed by the judge or

within sixty days thereafter). *See* 1976 Sess., 66th G.A., ch. 1245(4), § 525, effective January 1, 1978. Apparently this was to accommodate new statutes relating to re-consideration of sentences. *See* §§ 902.4, 903.2, The Code 1979. Repeal of section 602.15 is an additional reason militating against a rigid construction of the "evident mistake" language of section 602.17.

Today's trial courts are busy courts. Lacking support personnel, they frequently must rely on lawyers to draft rulings which often are signed in necessary haste amid unavoidable interruptions. As a matter of policy, we should avoid drawing tight little restrictive lines around the court's subsequent power to make corrections and supply omissions to conform a ruling to the court's intent.

I would hold trial court had the authority to sign this nunc pro tunc order and would proceed to the substantive merits of the case.

REES and ALLBEE, JJ., join in this dissent.